UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MACKLE VINCENT SHELTON,

      Petitioner,

v.                                  Case No. 6:07-CV-839-Orl-35KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.
_____/

**SUPPLEMENTAL MEMORANDUM REGARDING CLAIM ONE OF
PETITIONER'S AMENDED PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner Shelton raises a facial Constitutional challenge to Florida's statute prohibiting the possession, sale, or delivery of a controlled substance because it creates a strict liability offense under which he has been sentenced to eighteen-years' imprisonment. Doc.1 at 5. This presents an important question of Constitutional law regarding the power of a legislature to impose extremely harsh penalties on a broad range of conduct without proof of a guilty mind or wrongful intent. The Florida Legislature's elimination of the *mens rea* element of its drug statute creates a strict liability crime. The due process clause of the United States Constitution prohibits the imposition of harsh penalties via strict liability provisions. Whether measured by Petitioner's sentence (eighteen years), the maximum permitted by the subsection under which he was convicted (thirty years), or the statute as a whole (life imprisonment), the penalties under the Florida statute are harsh. Due process is also violated by the statute in light of the broad array of potentially innocent conduct swept within its net.

With regard to the habeas standard of review under 28 U.S.C. § 2254(d), there is no basis upon which to conclude that the Florida courts determined the significant federal Constitutional question presented by this stark departure from established law by its Legislature "on the merits."  No Florida court has ever cited or discussed either the due process clause or any federal precedent from any jurisdiction in construing the statute.  In Petitioner's case, the Florida appellate courts simply "affirmed."  There is thus no basis even to consider whether the Florida courts have engaged in an "unreasonable application of federal law" because it is not clear that they have engaged in any such application at all.

The State makes no claim that its courts considered Petitioner's federal Constitutional claim "on the merits," but even if they had, Petitioner's claim should be granted.  There may be reasonable doubt about where on the continuum of punishment lies the due process limit for strict liability crimes, but the *existence* of such a Constitutional limit cannot be doubted.  Florida's statute and the penalties it permits cannot co-exist with a due process limit because it permits every form of punishment short of death, including life imprisonment.  For the reasons set forth below, this Court should invalidate Florida Statute § 893.13 pursuant to the due process clause of the United States Constitution and grant Petitioner a writ of habeas corpus.

## I.      PROCEDURAL BACKGROUND

Petitioner was convicted and sentenced to eighteen years' imprisonment for distributing cocaine with a value between $20 and $30. Doc.7 App.B at T156, 205-06.  This violated Florida Statute § 893.13, which deems it "unlawful for any person to sell, manufacture, or deliver or possess with intent to sell, manufacture, or deliver, a controlled substance."  As initially

2

construed by the Florida Supreme Court, this statute required proof that the defendant knew the substance at issue was an illicit one. *Chicone v. State,* 684 So.2d 736, 744 (Fla. 1996). This ruling was in accord with a substantial body of law, as discussed below. The Florida Legislature, however, effectively overruled this decision in 2002 through the enactment of Florida Statute § 893.101, which stated that *Chicone* was "contrary to legislative intent" and that "knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter." This enactment was without precedent in the history of the Republic in that it permits the imposition of the harshest penalty possible short of death pursuant to a strict liability provision not involving a felony murder.

Petitioner was prosecuted after the 2002 statute, and his jury was instructed that it must convict him if they found that he had delivered cocaine without regard to whether he knew what he was delivering was a controlled substance, or indeed whether he knew he was delivering anything at all. Doc.7 App.B at T338. Petitioner was found guilty. *Id.* at T352. His conviction was ordinarily punishable by a term of imprisonment of up to fifteen years. Fla. Stat. §§ 775.082, 893.13(1)(a)(1). However, this statutory maximum penalty was doubled to thirty years and augmented by a ten-year mandatory minimum sentence because Petitioner was classified as a "Habitual Violent Felony Offender" as defined by Florida Statute § 775.084(1)(b). Petitioner was sentenced to eighteen years' imprisonment. Doc.7 App.A at 219. He challenged the constitutionality of the sentence in the Florida Courts both on direct appeal, Doc.12 App.A at 24-29, and on collateral attack, Doc.7 App.E, Rule 3.850 Pet. at 7-8; Mem. supporting Rule 3.850 Pet. at 2-8, on the ground that § 893.13, as clarified by § 893.101, is facially

3

unconstitutional under the due process clause of the United States Constitution.  These claims were denied by the Florida courts without any analysis or discussion of the federal Constitutional issue. Doc.7 App.D; App.F at 2-3; App.H.  Having exhausted his state remedies, Petitioner now presents his Constitutional claim to this Court. Doc.1 at 5.

## II.   SECTION 893.13 IS FACIALLY UNCONSTITUTIONAL BECAUSE IT DESCRIBES A STRICT LIABILITY OFFENSE WITH A HARSH PENALTY

### A.   The abrogation of the *mens rea* requirement in Section 893.13 renders the offense a strict liability crime.

There are a plethora of decisions of the United States Supreme Court and lower courts struggling with precisely the issue confronted by the Florida Supreme Court in *Chicone* – a criminal statute lacking a *mens rea* element on its face.[1] These cases presented questions of statutory construction and legislative intent regarding whether a strict liability offense was intended or whether a *mens rea* element should be read into the statutes by construction.  This case is not difficult in that regard.  A clearer expression of intent by the Florida Legislature to create a strict liability offense would hardly have been possible.  As noted above, in the face of the Florida Supreme Court's decision reading a *mens rea* requirement into the statute, the Legislature explicitly overruled that decision as "contrary to legislative intent." Fla. Stat. § 893.101(1).  The Legislature then stated that it "finds that knowledge of the illicit nature of a

---

[1]*See, e.g.*, *Staples v. United States*, 511 U.S. 600 (1994);  *Liparota v. United States*, 471 U.S. 419 (1985); *United States v. United States Gypsum Co.*, 438 U.S. 422 (1978); *Morissette v. United States*, 342 U.S. 246 (1952); *United States v. Heller*, 579 F.2d 990 (6th Cir. 1978); *United States v. Renner*, 496 F.2d 922 (6th Cir. 1974); *State v. Giorgetti*, 868 So.2d 512 (Fla. 2004); *Dawkins v. State*, 547 A.2d 1041 (Md. Ct. App. 1988)(collecting cases); *State v. Williams*, 115 N.E.2d 36 (Ohio Ct. App. 1952); *State v. Hefflin*, 89 S.W.2d 938 (Mo. 1936).

4

controlled substance is not an element of any offense under this chapter." Fla. Stat. § 893.101(2).

The Florida Legislature's explicit elimination of the *mens rea* element in § 893.13 results in the definition of a strict liability crime. *United States v. Hernandez-Landaverde*, 65 F.Supp.2d 567, 571 n.3 (S.D.Tx.1999)("Strict liability crime is defined as a 'crime that does not require a *mens rea* element…'") (quoting *Black's Law Dictionary* 378 (7th ed.1999)). Person A could cause Person B to deliver – either "actually" or "constructively" – a "substance" to Person C. If the substance was a controlled one, Person B can be convicted under the statute with proof of nothing more. This is strict liability. Indeed, the Florida statute does not even require proof that Person B was aware she was delivering anything at all.

The strict liability nature of the offense is illustrated by examining the varieties of *mens rea* alternatives articulated by the American Law Institute in § 2.02 of the Model Penal Code.[2] The MPC denotes four types of *mens rea*: (a) purposely, (b) knowingly, (c) recklessly, and (d) negligently. Without belaboring the details of each of these mental states, it is apparent that none of them are required by § 893.13. The least culpable MPC mental state – negligence – requires that the defendant "should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct," and that the risk "must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard

---

[2]The Supreme Court has relied on these definitions in a number of cases. *See*, *e.g.*, *United States Gypsum Co.*, 438 U.S. at 444; *United States v. Freed*, 401 U.S. 601, 613 n.5 (1971)(Brennan, J., concurring); *Turner v. United States*, 396 U.S. 398, 416 n.29 (1970); *Leary v. United States*, 395 U.S. 6, 46 n.93 (1969).

of care that a reasonable person would observe in the actor's situation." MPC § 2.02(2)(d).  The Florida statute is violated without proof of even negligence.  It is, inescapably, a strict liability crime.

The State nevertheless contends that the offense is not a strict liability crime because the defendant may raise lack of knowledge as an affirmative defense.  Doc.7 at 7.  The State is incorrect.  The nature of a crime is determined by the elements to be proven to establish it. Indeed, had the legislature attempted to make guilty knowledge an element of the offense but then shifted the burden on it to the defense, this would violate due process. *Patterson v. New York*, 432 U.S. 197, 215 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 693-94 (1975).  The State cannot have it both ways.  Either the statue does not require proof of *mens rea*, making it strict liability, or it does require proof of *mens rea*, in which case the proof of it cannot permissibly be shifted to the defendant as an affirmative defense.[3]  No authority from any jurisdiction supports the State's claim that a statute otherwise unconstitutional for lack of elements required to be proven by the State may somehow be rescued by requiring the defendant to disprove such elements.

It bears emphasis that strict liability offenses are disfavored in the law for a reason.  As explained by the Supreme Court in *Morissette*:

>     The contention that an injury can amount to a crime only when inflicted
> by intention is no provincial or transient notion. It is as universal and persistent

---

[3]Moreover, even if on its face the statute could somehow be converted from a strict liability offense to a general intent crime through the affirmative defense provided by the statute, it was certainly one of strict liability as applied to Petitioner because the jury was given no instruction regarding the significance of his lack of knowledge.

in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a 'vicious will.'

342 U.S. at 250-51. Indeed, the ALI explicitly rejected strict or "absolute" liability as a legitimate component of the criminal law in the MPC. MPC § 2.05, Cmt.1 ("Crime does and should mean condemnation and no court should have to pass that judgment unless it can be declare that the defendant's act was culpable. This is too fundamental to be compromised.").

Not all legislatures, of course, have adopted the MPC or followed its categorical rejection of strict liability. But the courts have continued to express deep skepticism of such legislation because punishment without proof of a guilty mind is foreign to traditional notions of due process. The Constitutional border of strict liability must be patrolled with great diligence.

> **B.      Because Section 893.13 is a strict liability offense, it is facially unconstitutional.**

As noted above, the Supreme Court has previously confronted legislative offenses lacking an explicit *mens rea* element and considered whether they should be construed to require *mens rea* as a matter of legislative intent. In some instances, these statutes have been construed not to contain a *mens rea* element but have been upheld notwithstanding their character as wholly or partially strict liability offenses. These cases have generally involved what are

referred to as regulatory or public welfare offenses.[4]  The Supreme Court in *Morissette* described

such provisions as sustainable because "the accused, if he does not will the violation, usually is

in a position to prevent it with no more care than society might reasonably expect and no more

exertion than it might reasonably exact from one who assumed his responsibilities." 342 U.S.

at 256.   *Morissette* stressed, however, that in these instances the "penalties commonly are

relatively small, and conviction does no grave damage to an offender's reputation." *Id*.

*Morissette* did not set a specific limit on legislative power to enact strict liability offenses, but

the Court has consistently made clear that such a limit exists.[5]   Indeed, numerous courts

throughout the nation have invalidated strict liability crimes under the due process clause

pursuant to this Supreme Court precedent and even before it.[6]

Two common themes run through both the cases considering whether to construe a

---

[4] *See, e.g.*, *Freed*, 401 U.S. 601 (1971); *United States v. Dotterweich*, 320 U.S. 277 (1943); *United States v. Balint*, 258 U.S. 250 (1922).

[5] *See, e.g.*, *Jones v. United States*, 526 U.S. 227, 241 (1999) (recognizing "limit upon state authority to reallocate the traditional burden of proof"); *Liparota*, 471 U.S. at 424 n.6 (1985) ("Congress must act within any applicable constitutional constraints in defining criminal offenses"); *Patterson*, 432 U.S. at 210 (state legislatures may reallocate burdens of proof by making some elements into affirmative defenses, but "there are obviously constitutional limits beyond which the States may not go in this regard"); *Smith v. California*, 361 U.S. 147, 150 (1959)(power of states to create strict liability crimes "not without limitations"); *Lambert v. California*, 355 U.S. 225, 228 (1957) ("There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition. . ." but "due process places some limits on its exercise.").

[6] *See, e.g.*, *State v. Lisbon Sales Book Co.*, 182 N.E.2d 641 (Ohio Ct. Com. Pleas 1961); *City of Seattle v. Ross*, 344 P.2d 216 (Wash. 1959); *Commonwealth v. O'Harrah*, 262 S.W.2d 385 (Ky. Ct. App. 1953); *State v. Labato*, 80 A.2d 617, 623 (N.J. 1951); *State v. Prince*, 189 P.2d 993 (N.M. 1948); *People v. Estreich*, 272 A.D. 698 (N.Y. App. Div. 2d 1947); *Kilbourne v. State*, 95 N.E. 824 (Ohio 1911).

statute without an explicit *mens rea* to require one and the cases considering the due process

limits on those without a *mens rea* element: (1) the severity of the penalty, and (2) the nature of

the activity at issue and the extent to which it is inherently likely to be subject to regulation. As

to the first consideration, strict liability provisions with penalties of greater than one year of

imprisonment are seldom sustained, and undersigned counsel located no true strict liability

provision with a punishment of greater than two-year imprisonment that has been upheld under

the due process clause. Under the second consideration, statutes proscribing conduct one would

readily assume might be lawful are generally held to require a *mens rea* element, while those

proscribing inherently questionable conduct have sometimes been upheld notwithstanding the

lack of a *mens rea* element because a guilty mind may readily be inferred from the very nature

of the conduct being regulated. The Florida statute violates due process considering both its

severity and the nature of the conduct it regulates.

     **1.**     **Section 893.13 violates due process because its penalties are too severe.**

Most courts invalidating strict liability crimes under the due process clause have applied

the standard articulated by Justice Blackmun, while a judge of the Eighth Circuit Court of

Appeals, in *Holdridge v. United States*, 282 F.2d 302 (8th Cir. 1960):

> [W]here a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where conviction does not gravely besmirch, where the statutory crime is not taken over from the common law, and where congressional purpose is supporting, the statute can be construed as one not requiring criminal intent. The elimination of this element is then not violative of the due process clause.

282 F.2d at 310. *See, e.g. United States v. Wulff*, 758 F.2d 1121, 1125 (6th Cir. 1985)("The elimination of the element of criminal intent does not violate the due process clause where (1) the penalty is relatively small, and (2) where conviction does not gravely besmirch.").[7]

Applying the *Holdridge* standard to § 893.13 as clarified by § 893.101, the statute is a blatant violation of due process of law.  As with the strict liability issue, the question is not a close one.  It cannot reasonably be asserted that the penalty for violating the statute is "relatively small."  Looking first to the portions of the statutory scheme applicable to Petitioner, a violation § 893.13(1)(a)(1) is a second degree felony, ordinarily punishable by imprisonment for up to fifteen years. Fla. Stat. § 775.082(3)(c).  Because of his prior criminal record, Petitioner was deemed a "Habitual Violent Felony Offender" under Florida Statute § 775.084(1)(b), which permits a second degree felony to be punishable by imprisonment for up to thirty years and includes a ten-year mandatory minimum period of imprisonment.  Moreover, this Court need not confine its consideration exclusively to the portions of the statute applicable to Petitioner because § 893.101 clarified the Legislature's intent to dispense with *mens rea* regarding all of § 893.13.  Other provisions of that statute are ordinarily punishable by imprisonment for thirty years for first offenders, and by life imprisonment for recidivists.[8]

It is undisputable that sentences of fifteen years, thirty years, and life imprisonment are

---

[7]*See also Staples*, 511 U.S. at 618 n.15; *Freed*, 401 U.S. at 613 n.4 (Brennan, J., concurring); *United States v. Ayo-Gonzalez*, 536 F.2d 652, 658 (1976).

[8]*See, e.g.*, § 893.13(1)(b) (delivery of more than 10 grams of a schedule I substance); § 893.13(1)(c)(delivery of cocaine within 1,000 feet of a child care facility, school, park, community center, or public recreational facility).

not "relatively small." Indeed, the point is both undisputable and in fact undisputed. The State has advanced no such argument. Moreover, a ruling upholding penalties on the order permitted by the statute would leave literally nowhere else to go to draw a meaningful Constitutional line. Even if there is uncertainty about precisely where this line is drawn, that hardly matters here because by any measure sentences of fifteen years to life are on the wrong side of it.

Turning to a second consideration articulated by Justice Blackmun, there can similarly be little question that a conviction for a second degree felony coupled with a sentence of fifteen to thirty years tends to "gravely besmirch" a person's reputation. As a convicted felon, Petitioner has lost his right to vote, to sit on a jury, to serve in public office, and to obtain a plethora of professional licenses and opportunities. As rather colorfully stated in *Morissette*, a felony is "as bad a word as you can give to a man or thing." 342 U.S. at 260. The label felon, when coupled with a proclamation that the defendant is so horrible that he must be separated from society for fifteen to thirty years, is an irreparable stain on the recipient's standing in the community.

No statute carrying penalties on the magnitude of § 893.13 has ever been upheld under federal law. For example, in *United States v. Wulff*, 758 F.2d 1121 (6th Cir. 1985), the Sixth Circuit held that the felony provision of the Migratory Bird Treaty Act was unconstitutional even though the maximum penalty was only two years' imprisonment. Applying the *Holdridge* factors, the court easily concluded that a two-year sentence was not "relatively small" and that a felony conviction "irreparably damages one's reputation." *Id.* at 1125. The District Court for the District of South Dakota reached the identical conclusions regarding the same strict liability

provision. *United States v. St. Pierre*, 578 F.Supp. 1424, 1429 (D.S.D. 1983).

The same two-year strict liability provision struck down by the Sixth Circuit in *Wulff* was upheld by the Third Circuit in *United States v. Engler*, 806 F.2d 425 (3d Cir. 1986), but the question was a very close one for the court. The question was so close, in fact, that the United States conceded that the act would be unconstitutional in the absence of an inferred *mens rea* element, and urged the court to read one into the statute. *Id*. at 431. The court declined to do so, however, and then confronted the resulting constitutional question. For the Third Circuit, the difference between the one-year penalty under the misdemeanor provision (which had been upheld in *Wulff*) and the two-year penalty under the felony provision was so slight "that the analysis takes place on a very slippery slope with too much 'in the eye of the beholder.'" *Id*. at 435. Instead, the court felt the better approach was to permit a penalty on the order of two years' imprisonment for strict liability offenses that are part of "a regulatory measure in the interest of public safety, which may well be premised on the theory that one would hardly be surprised to learn that [the prohibited conduct] is not an innocent act." *Id.* (quoting *Freed*, 401 U.S. at 609). Because the "capture and sale of species protected by the MBTA is not 'conduct that is wholly passive,' but more closely resembles conduct 'that one would hardly be surprised to learn ... is not innocent,'" the court upheld the constitutionality of the two-year penalty. *Id.* at 435-36.

While the Third and Sixth Circuits split on whether due process prohibits a two-year sentence for a strict liability crime, undersigned counsel has not located any precedent applying federal law to sustain such a provision with any greater penalty, and certainly not a penalty on the order of eighteen years. Indeed, at least one circuit has explicitly stated that a twenty-year strict liability provision would be unconstitutional. In *United States v. Heller*, 579 F.2d 990 (6th

12

Cir. 1978), the court considered a statute proscribing interstate extortion that was silent regarding *mens rea* and carried a maximum penalty of twenty years' imprisonment. The court held that a *mens rea* element must be inferred by judicial construction because the statute would otherwise violate the due process clause. *Id*. at 994 ("if Congress attempted to define a Malum prohibitum offense that placed an onerous stigma on an offender's reputation and that carried a severe penalty, the Constitution would be offended …."). Florida's statute provides for penalties that greatly exceed those ever before sustained for a strict liability crime.

> 2.  **Section 893.13 violates due process because it regulates inherently innocent conduct**.

Florida's strict liability substance delivery statute also runs afoul of due process limits when viewed from the perspective of the nature of the activity regulated. Where laws proscribe conduct that is neither inherently dangerous nor likely to be regulated, the Supreme Court has consistently either invalidated them or construed them to require proof of *mens rea*.

For example, in *Lambert v. California*, 355 U.S. 225 (1958), the Court held that a strict liability statute punishable by six months' imprisonment violated due process. The law at issue proscribed the failure of a convicted felon to register with the police within five days of entering Los Angeles, but did not require proof that the defendant knew of the registration requirement. *Id.* at 226-27. The Court struck the statute because being in Los Angeles is not inherently unlawful, and thus the defendant had no reason to believe her conduct might be proscribed. *Id.* at 228-30. Thus, not even a small criminal penalty may constitutionally be imposed where the conduct at issue includes a wide array of behavior not inherently likely to be regulated.

Similarly, in *Liparota v. United States*, 471 U.S. 419 (1985), the Court held that the

offense of unlawfully acquiring food stamps required proof that the defendant knew he had acquired the stamps unlawfully.  The Court made clear that "constitutional constraints" limit a legislature's ability to enact strict liability crimes. *Id*. at 424 n.6.  It had no need to consider these limits, however, because the statute at issue was not one of true strict liability.  The government agreed it was required to prove the defendant knew the items he was acquiring were food stamps, but disagreed with the defendant's contention that it must also prove he knew he had acquired them by unlawful means. *Id*. at 423.  The Court nevertheless agreed with the defendant because "[a] food stamp can hardly be compared to a hand grenade" in terms of the likelihood of the defendant reasonably foreseeing his conduct to be unlawful. *Id*. at 433.  The Court read a *mens rea* of specific intent into the statute as a matter of judicial construction. *Id.*

Admittedly, the Court has upheld statutes regulating inherently dangerous conduct without requiring *mens rea* as to every element, but these cases, unlike the instant one, did not involve pure strict liability offenses because they had at least some *mens rea* requirements.  One such case in the narcotics area is *United States v. Balint*, 258 U.S. 250 (1922).  The statute at issue there was not a true strict liability statute because it required proof that the defendant knew that he was selling "dangerous narcotics."  The Court held that due process was satisfied without proof of the additional fact that the defendant knew that the specific narcotics he was selling were within the ambit of the statute because "where one deals with others and his mere negligence may be dangerous to them, as in selling diseased food or poison, the policy of the law may, in order to stimulate proper care, require the punishment of the negligent person though he be ignorant of the noxious character of what he sells." *Id*. at 252-53.

Similarly, in *United States v. Freed*, 401 U.S. 601 (1971), the Court considered a statute

proscribing the possession of unregistered grenades.  The statute was not a pure strict liability offense because it required proof that the defendant knew what he possessed was a weapon. *Id*. at 607; *see also id*. at 612 (Brennan, J., concurring).  The defendant contended that it should be read to also require proof that he knew his grenade needed to be registered and that it was not. *Id*. at 605.  The Court disagreed, and upheld the statute notwithstanding its ten-year maximum punishment because "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." *Id*. at 609.  Thus, under *Freed* due process is not offended by a ten-year provision requiring general rather than specific intent where the conduct at issue is inherently questionable.  There is nothing in *Freed*, however, to suggest the Court would have upheld the statute had it permitted guilt without proof the defendant knew what he possessed was a grenade.

*Freed* was followed shortly after by *United States v. International Minerals & Chemical Corp*., 402 U.S. 558 (1971), where the Court sustained a statute proscribing the knowing shipment of "corrosive liquids" without listing them as such in the pertinent shipping papers. The statute was not one of strict liability because it required proof that the defendant knew he was shipping a corrosive liquid. *Id*. at 560.  The Court held that due process did not require proof that the defendant also knew he was required to list this on the shipping papers because, like the hand grenades at issue in *Freed*, shipping sulfuric and other dangerous acids is inherently dangerous and likely to be regulated. *Id*. at 564-65.  The Court stressed, however, that had the statute attempted to so regulate the shipping of "pencils, dental floss" and "paper clips," without a greater *mens rea* requirement, this would "raise substantial due process questions." *Id*.

While many of the above cases look either to the severity of the punishment or to the inherently questionable nature of the conduct at issue, the Court's decision in *Staples v. United*

15

*States*, 511 U.S. 600 (1994), discusses both considerations.  The Court addressed the applicable *mens rea* in a federal statute proscribing possession of an unregistered machine gun.  Like the statute in *Freed*, this was not a true strict liability offense because the government was required to prove that the defendant knew he possessed something that was "highly dangerous and of a type likely to be subject to regulation." *Id*. at 634-35.  The government argued, however, that it was not required to prove that the defendant knew that the type of firearm he owned was a prohibited one – in this case a machine gun. *Id*. at 606, 615.  The Court rejected the government's position, and held that as a matter of legislative intent it was indeed necessary for the government to prove the defendant's awareness of the characteristics of his firearm that rendered it unlawful. *Id*. at 619.  In reaching this conclusion, the Court distinguished the possession of hand grenades because "there is a long tradition of widespread lawful gun ownership by private individuals in this country." *Id*. at 610.  The Court was bolstered in its reading of the statute by the "potentially harsh" penalty of up to ten years' imprisonment for violations of it. *Id*. at 616.  After reviewing the extensive history, caselaw, and commentary regarding strict liability offenses, the Court explained that this history "might suggest that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense," and that "absent a clear statement from Congress that *mens rea* is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with *mens rea*." *Id*. at 618.  The Court did not find it necessary to establish a firm rule, however, as it found the severe ten-year penalty and inherently innocent nature of gun ownership standing alone required it to construe the statute to include a *mens rea* element regarding the nature of the firearm owned. *Id*. at 619-20.

16

Wholly apart from its severe penalties, § 893.13 cannot pass muster when considered in relation to the conduct it regulates.  In contrast with distributing grenades, protected species, and sulphuric acid, there is a long tradition throughout human existence of lawfully distributing items from one individual to another under many differing facts and circumstances.  Nor does *Balint* support the Florida statute because unlike the provision upheld there, § 893.13 does not require proof that the defendant knew what he was distributing, much less that it was known by him to be dangerous.  Florida's prohibition on the mere delivery of a substance without proof of knowledge regarding the nature of the substance is therefore akin to the Los Angeles ordinance stricken in *Lambert* and the food stamp provision in *Liporata*.  Section 893.13 certainly sweeps in a wider array of innocent conduct than the firearm provision considered in *Staples*.  For this reason, particularly in combination with its severe penalties, § 893.13 violates the due process clause.

**C.    The State's reliance on the decisions of its own courts sustaining Section 893.13 under state law is misplaced.**

Without citation to a single federal authority, Florida nevertheless claims its statute does not violate the United States Constitution because several of its courts have said so. Doc.7 at 7. In this regard, the State relies on *Wright v. State*, 920 So.2d 21 (Fla. 4th DCA 2005), and *Burnette v. State*, 901 So.2d 925 (Fla. 2d DCA 2005).[9]  In both cases the appellant challenged § 893.13 as clarified by § 893.101 on the ground that the Legislature had unconstitutionally shifted the

---

[9]The State follows its citation of *Wright* and *Burnette* with "see also" references to two other Florida decisions – *Reynolds v. State*, 842 So.2d 46 (Fla. 2d DCA 2005), and *Harris v. State*, 932 So.2d 551 (Fla. 1st DCA 2006).  *Harris* merely follows *Wright* and *Burnette* with no further analysis.  *Reynolds* is inapposite as it concerns a claim that a general intent statute involving animal cruelty was unconstitutional because it did not require specific intent.

burden of proof on the *mens rea* element from the State to the defendant.  Both courts rejected

this challenge by reasoning that the burden of proof as to *mens rea* had not been shifted – it had

been eliminated as an element altogether. 920 So.2d at 25; 901 So.2d at 927-928.  *Burnette* gave

no further consideration of the Constitutional implications of the resulting statute. 901 So.2d at

928.  In *Wright*, the court upheld the remaining statute by describing it as a "general intent

crime" to be reviewed for constitutionality under what the court – citing no federal authority –

articulated as a "rational basis standard of review." 920 So.2d at 24.  The statute passed

constitutional muster under this standard, according to the state appellate court, because

"[c]learly, there is a rational relationship between the legitimate government interest in

addressing the drug problem and the elimination of the difficult-to-prove element of knowledge

of a substance's illicit nature." *Id*.

> *Wright* and *Burnette* do not control the instant question.  First, unlike Wright and

Burnette, Petitioner does not attack the statute on the ground that the burden of proof on the

*mens rea* element has been shifted to the defendant.  Instead, he asserts that, as observed by both

*Wright* and *Burnette*, the *mens rea* element has been removed altogether.  The gist of Petitioner's

claim is that this renders the remaining statute a strict liability offense – a question not addressed

by either *Wright* or *Burnette*.  Second, the *Wright* court's view that a statute lacking a *mens rea*

element can be viewed as a "general intent" crime misapprehends the distinction between strict

liability and general intent crimes.  Without a *mens rea* element an offense does not require a

showing of any intent whatsoever.  In contrast, "[g]eneral intent is defined as '[t]he state of mind

required for the commission of certain common-law crimes not requiring specific intent or not

imposing strict liability. General intent usually takes the form of recklessness (involving actual

awareness of a risk and the culpable taking of that risk) or negligence (involving blameworthy inadvertence).'" *United States v. Hernandez-Landaverde*, 65 F.Supp.2d 567, 571 n.2 (S.D. Tx. 1999)(quoting *Black's Law Dictionary* 813 (7th ed.1999)). "To act with general intent, a defendant must know the facts that make his actions illegal, but not that the action itself is illegal." *United States v. Salazar-Gonzalez*, 458 F.3d 851, 855 (9th Cir. 2006). As applied here, if § 893.101 were a general intent crime, it would have as an element that the defendant knew the nature of the substance he was delivering. There would also have to be proof that the defendant knew he was delivering the substance.[10] Those are the facts that make his actions illegal. Having failed to appreciate that § 893.101 is a strict liability offense, the *Wright* court did not consider the resulting Constitutional question presented by that fact.

Moreover, *Wright* is not binding here because the standard the court did apply – a so-called "rational basis test" – is inapplicable. As noted, the state court did not cite any federal authority in support of its use of this standard. There is none. Indeed, the suggestion that a legislature may define crimes carrying fifteen- and thirty-year sentences of imprisonment in any manner it pleases so long as there is a rational connection between the problem it addresses and the need to eliminate any elements that might be "difficult-to-prove," 920 So.2d at 24, is striking. It provides no meaningful protection for the citizenry of any kind.[11] To take an extreme example, under this "rational basis" standard, a legislature could elect to criminalize the

---

[10]By further contrast, if § 893.101 were a specific intent crime, it would have as an additional element that the defendant knew it was unlawful for him to deliver the substance he was delivering.

[11]*Cf. Brown v. Maryland*, 25 U.S. 419, 439 (1827)(Marshall, C.J.)("Questions of power do not depend on the degree to which it may be exercised.").

breathing of oxygen and provide as an affirmative defense that the defendant was not engaged in unlawful activity while doing so.  The situation is analogous to the Sixth Amendment limits on reallocating elements into sentencing factors, as described by Justice Scalia in *Monge v. California*:

> I do not believe that the distinction is (as the Court seems to assume) simply a matter of the label affixed to each fact by the legislature. Suppose that a State repealed all of the violent crimes in its criminal code and replaced them with only one offense, "knowingly causing injury to another," bearing a penalty of 30 days in prison, but subject to a series of "sentencing enhancements" authorizing additional punishment up to life imprisonment or death on the basis of various levels of *mens rea*, severity of injury, and other surrounding circumstances. Could the State then grant the defendant a jury trial, with requirement of proof beyond a reasonable doubt, solely on the question whether he "knowingly cause[d] injury to another," but leave it for the judge to determine by a preponderance of the evidence whether the defendant acted intentionally or accidentally, whether he used a deadly weapon, and whether the victim ultimately died from the injury the defendant inflicted? If the protections extended to criminal defendants by the Bill of Rights can be so easily circumvented, most of them would be, to borrow a phrase from Justice Field, "vain and idle enactment[s], which accomplished nothing, and most unnecessarily excited Congress and the people on [their] passage."

524 U.S. 721, 738-39 (1998)(citation omitted).  The "rational basis" "test" is of no help in drawing a Constitutional line, and the *Wright* court's use of it is unprecedented and logically incoherent.

Section 893.13 is a strict liability statute regulating a wide swath of otherwise lawful conduct and visits those who violate it with extremely harsh penalties.  The statute should be stricken under the due process clause of the Fourteenth Amendment.

## III.   THE FLORIDA COURT FAILED TO ADJUDICATE PETITIONER'S CHALLENGE TO THE FACIAL CONSTITUTIONALITY OF SECTION 893.13 ON THE MERITS

The Order appointing undersigned counsel directed the filing of a brief that "may"

20

discuss whether the state court's rejection of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." Doc.19 at 3-4. This is the deferential standard of review of habeas claims made by state prisoners where such claims have been "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Petitioner does not agree that this standard of review applies to claim one of his Petition.

Petitioner first presented claim one on direct appeal of his conviction *pro se* after his appointed counsel filed an *Anders* brief and a motion to withdraw. Doc.12 App.A at 24-29; Doc.7 App.C. The State did not file a brief in the appeal, and the Florida Fifth District Court of Appeal affirmed the conviction in a single word *per curiam* decision. Doc.7 App.D. Petitioner then presented his claim to the State trial court in a motion pursuant to Fla. R. Crim. P. 3.850, Doc.7 App.E, Rule 3.850 Pet. at 7-8; Mem. supporting Rule 3.850 Pet. at 2-8, but this claim was denied as procedurally barred because it had previously been raised on direct appeal. Doc.7 App.F at 2-3. Petitioner's appeal of the denial of his post-conviction motion was similarly affirmed *per curiam* without comment by the appellate court. Doc.7 App.H.

The question of whether a "silent denial" of a Petitioner's claim by a state court is an "adjudicat[ion] on the merits" within the meaning of § 2254(d) is presently pending before the Supreme Court in *Harrington v. Richter*, Case No. 09-587. The Court will presumably resolve this question prior to a ruling by this Court, so there would appear to be little reason to address it in detail here. Suffice it to say that as a matter of Florida law regarding the effect of a *per curiam* affirmance, "there is no presumption that the affirmance was on the merits." *Department*

*of Legal Affairs v. District Court of Appeal, 5th District*, 434 So.2d 310, 311 (Fla. 1983).[12]  But without regard to whether a State is entitled to deference based on a "silent" ruling, it is at the least incumbent on the State to assert that such a merits adjudication has taken place and that this ruling is indeed due the deference provided by § 2254(d).  The State has made neither showing here.  In its response to the Petition as to claim one, Respondent makes no argument that the Florida courts adjudicated the merits of Petitioner's federal constitutional claim. Doc.7 at 6-7. Nor does the State argue that its adjudication of Petitioner's claim was in accord with or a reasonable application of federal law, or that federal law on the issue is unclear. *Id.*  Rather, the State asserts that the claim was not a federal Constitutional one at all, but merely a state law challenge to a specific sentence. *Id.*[13]  The State thus makes no assertion that it is due the deference provided by § 2254(d) as to this claim.[14]  Accordingly, Petitioner is due relief if Florida's statute is facially unconstitutional without regard to whether the state courts' rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law.

---

[12]Moreover, from a policy perspective state courts should not be rewarded with deference where they fail to apply federal law at all, as this makes it virtually impossible for a later federal court to assess whether that law has been "applied" unreasonably.  It is understandable for Congress to direct federal courts to afford deference to state court rulings where they apply and discuss federal law, but there is no reason to afford such deference to state court rulings that say nothing.  *See also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)(attributing reason to silent decision is "both difficult and artificial").

[13]The State is incorrect in this regard as Petitioner's claim, albeit *pro se*, clearly and forcefully advances the issue as a federal due process violation. Doc.12 App.A at 24-29; Doc.7 App.E, Rule 3.850 Pet. at 7-8; Mem. supporting Rule 3.850 Pet. at 2-8.

[14]In contrast, the State explicitly asserts it is entitled to § 2254(d) deference as to *other* claims made by Petitioner. Doc.7 at 10-11.

IV.   **THE FLORIDA COURT'S REJECTION OF PETITIONER'S CHALLENGE TO THE FACIAL CONSTITUTIONALITY OF SECTION 893.13 IS CONTRARY TO CLEARLY ESTABLISHED LAW**

In the alternative, even if the State is due § 2254(d) deference after waiving any claim to it, and even if the silent denial of Petitioner's claim was an adjudication of it on the merits, the § 2254(d) standard is met here. The result of the Florida courts' actions is to uphold against facial constitutional challenge a strict liability crime punishable by imprisonment for up to thirty years proscribing a wide array of potentially innocent conduct. No court has ever evaluated the question under the federal due process clause and drawn the line of permissible punishment for a true strict liability offense at greater than two years of imprisonment. *Cf. Engler,* 806 F.2d at 431 (upholding two-year provision under Migratory Bird Treaty Act notwithstanding concession by United States that act should be stricken as a violation of the due process clause if construed as strict liability). Petitioner's eighteen-year sentence exceeds that threshold by a factor of nine, and the thirty-year maximum permitted by § 893.13 in combination with § 775.084(1)(b) exceeds the two-year threshold by a factor of 15. And if the other provisions of § 893.13 are considered, they permit a sentence of life imprisonment – the most severe punishment possible short of execution.

It is not as if Florida can claim the comfort of company in its approach. Although the Order appointing the undersigned states that Washington and North Dakota have similar provisions, Doc.19 at 3,[15] North Dakota amended its statute to require a *mens rea* of "willfully"

───────────────

[15]*See also Dawkins v. State*, 547 A.2d 1041, 1045 n.7 (Md. Ct. App. 1988)("Only North Dakota and Washington have determined that knowledge is not an element of the offense of possession of controlled substances").

in 1989.  *See State v. Bell*, 649 N.W.2d 243, 252 (N.D. 2002)(citing 1989 N.D. Sess. Laws ch.

267, § 1).  Thus, of the fifty states, only Florida and Washington have attempted to impose strict

liability for narcotics offenses.  Washington limits the penalty for violating its statute to ten

years' imprisonment. Wash. Stat. § 69.50.401(2)(a).[16]  Thus, by asserting legislative power to

imprison for a decade based on a strict liability offense, Florida stands virtually alone.  In its

assertion that it can imprison for even longer – such as Petitioner's sentence of eighteen years

– Florida stands completely alone.  There is an obvious reason for this – the other states have

elected to obey the precedents of the United States Supreme Court.

To be sure, the Court has not spoken in absolutes.  It has not fixed a specific penalty limit

on strict liability crimes, and has often looked both to the severity of the penalty and the nature

of the conduct at issue in reading *mens rea* elements into otherwise silent statutes and in drawing

Constitutional lines where a *mens rea* element is deemed absent.  But throughout all of the

Court's cases it has made clear that the due process clause serves as a limit on the legislature's

power to punish without proof of a guilty mind.  *See*, *e.g*., *Jones*, 526 U.S. at 241; *Liparota*, 471

U.S. at  424 n.6;  *Patterson*, 432 U.S. at 210; *Lambert*, 355 U.S. at 228.  The existence of this

Constitutional limit cannot be doubted.[17]  A strict liability provision carrying sentences of fifteen

years, thirty years, and life imprisonment exceed any and all precedent and cannot be rationally

---

[16]Moreover, Washington's courts have not yet considered a due process challenge to its statute. *Cf. State v. Bradshaw*, 98 P.3d 1190, 1195 (Wash. 2004)(declining to read *mens rea* element into statute and rejecting constitutional challenge based on vagueness and adverse impacts on "right to intrastate and interstate travel").

[17]Indeed, this Constitutional limit is recognized by Florida's Supreme Court. *See Giorgetti*, 868 So.2d at 516-19.

believed compatible with the existence of a meaningful Constitutional limit on the punishment of a strict liability crime.  The result of the Florida court's silent affirmances of Petitioner's eighteen-year sentence under a strict liability statute is contrary to established Supreme Court precedent.  It also reflects an "unreasonable" application of federal law, to the extent it is assumed that the Florida courts performed such an "application" of federal law at all.

## V.      CONCLUSION

Florida has enacted a provision permitting incarceration for vast spans of time – including life – without proof of wrongful knowledge or intent.  If this provision is sustained, it is difficult to foresee what Constitutional limits would be left to apply.  Once a State can imprison for decades or for life without proof of moral wrongdoing, there is no Constitutional barrier to Orwell's vision of the future.  No court has ever reviewed a strict liability criminal statute applying federal law and sustained a fifteen year-penalty (or anything even close).  This Court should not be the first to do so.  As stated by Mr. Justice Bradley:

> 'Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. * * * It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis*.'

*Boyd v. United States*, 116 U.S. 616, 635 (1886).  This Court should invalidate Florida Statute § 893.13 pursuant to the due process clause of the United States Constitution and grant Petitioner a writ of habeas corpus on claim one of his Petition.

Respectfully submitted,

/s/ James E. Felman
James E. Felman, FB#775568
jfelman@kmf-law.com
Katherine Earle Yanes, FB#159727
kyanes@kmf-law.com
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, Florida 33601-3396
Telephone:     (813) 229-1118
Facsimile:     (813) 221-6750

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 16, 2010, I electronically filed the foregoing

with the Clerk of the Court which will send a notice of electronic filing to:

Carmen F. Corrente
Office of the Attorney General
carmen.corrente@myfloridalegal.com

/s/ James E. Felman
James E. Felman

26