UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MACKLE VINCENT SHELTON,

    Petitioner,

v.                               CASE NO. 6:07-cv-839-Orl-35KRS

SECRETARY, DEPT. OF
CORRECTIONS, et. al.,

    Respondents.
_____/

## RESPONDENT'S SUPPLEMENTAL MEMORANDUM ON GROUND 1

COME NOW Respondents, by and through the undersigned Assistant Attorney General, and file this response to the supplemental memoranda of law, stating as follows:

This Court entered an order directing the parties to file a memorandum of law addressing Ground 1 of the petition regarding: (1) whether the abrogation of the *mens rea* requirement in section 893.13, Florida Statutes, renders the crime a strict liability offense; (2) whether the statute is facially unconstitutional or unconstitutional as applied; and (3) whether such unconstitutionality resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## PROCEDURAL CLARIFICATION

The State first notes that Petitioner suggests Respondents have made no showing that the State courts have adjudicated the merits of his constitutional claims. On the contrary, the State

maintains this matter was expressly raised on direct appeal in Shelton's *pro se* supplemental brief, and that therefore this issue was squarely before the appellate court. Thus, unless it is determined that a matter specifically presented to a State appeals court must result in a written opinion before federal courts consider the ruling an "adjudication on the merits," Respondents submit that the State's ruling is entitled to "due deference" under section 2254(d).

State summary rulings are entitled to "due deference," as held in <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (U.S. 2011). In fact, in said decision it was held that the AEDPA demands more than just a conclusory determination that a State Court's decision is "contrary to" or an "unreasonable application" of U.S. Supreme Court precedent. Under Section 2254(d) a habeas court must determine what arguments or theories supported, or could have supported, the state court's decision; and *then* it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the U.S. Supreme Court. If fair-minded jurists could disagree, the ruling must be upheld.

In further clarification of its earlier response to petition, the State would note that while Shelton raised the constitutionality of the allegedly "strict liability" offense in his direct appeal, he did so only in the context of his sentence.

2

Indeed, his prayer for relief at the conclusion of his initial brief requests that his sentence be reduced to one year incarceration; he does not claim that the statute is unconstitutional or that his conviction of an unconstitutional offense must be vacated. He claims that his *sentence* violates due process. Shelton is classified as a habitual offender under Florida's sentencing laws; as such, the State continues to argue that his claim that his habitual offender sentence is illegal is a matter of State law.

The State's foregoing procedural clarification raises a dichotomy as to the standard of review of the issue in question. Was there an adjudication on the merits if Shelton failed to raise the constitutionality of the statute below? The State suggests that Shelton "fairly presented" the issue in his direct appeal. However, it is clear that in his direct appeal and in his postconviction motion Shelton focused only upon the unconstitutionality of his sentence. The State will nevertheless discuss the issues raised in the supplemental memoranda.

## APPLICABLE LEGAL STANDARDS

Initially, the State would present the following quote from Armenia v. Dugger, 867 F.2d 1370, 1374 (11th Cir. 1989): "Federal courts are reluctant to construe the Constitution as allowing federal intrusion upon the administration of justice by the individual states. Patterson v. New York, 432 U.S. 197, 201, 97

S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977). It is normally within the power of the state to interpret and administer its laws, including strict liability criminal statutes, and its decisions are not subject to proscription under the due process clause unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. [Citations omitted]."

As noted in a footnote in <u>Armenia</u>, a strict liability offense is a more efficacious deterrent than any ordinary criminal statute because "a person engaged in a certain kind of activity would be more careful precisely because he knew that this kind of activity was governed by a strict liability statute" and because "the presence of strict liability offenses might have the added effect of keeping a relatively large class of persons from engaging in certain kinds of activity." Wasserstrom, <u>Strict Liability in Criminal Law</u>, 12 Stan.L.Rev. 731, 736-37 (1960). Parenthetically, the State suggests it is difficult to conceive of large numbers of people "innocently" selling or purchasing flour and sugar in plastic baggies for cash on a streetcorner.

<u>Armenia</u> involved the federal review of a Florida DWI-Manslaughter "strict liability" conviction, and it was held that no federal constitutional violation existed. The Court reasoned that the Florida Supreme Court's application and interpretation of its own DWI-manslaughter statute did not violate federal due process.

4

The Court further held that Florida chose to take a harsh stance against drunken driving and that it was Florida's prerogative to do so. Because a due process violation was not established, Armenia's claim became only a question of state law. Logically, questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief. Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th Cir. 1983). Accordingly, the district court's denial of habeas corpus relief was affirmed.

The holdings of the vast majority of cases that have decided this issue are consistent with the United States Supreme Court cases involving the constitutionality of strict liability crimes. While "the existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence," strict-liability offenses are not unknown to the criminal law and they do not invariably offend constitutional requirements. U.S. v. U.S. Gypsum Co., 438 U.S. 422, 436, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978) (internal citations omitted). Moreover, despite its preference for a *mens rea* requirement when interpreting criminal statutes, the "[Supreme] Court has never articulated a general constitutional doctrine of *mens rea*." Powell v. Texas, 392 U.S. 514, 535, 88 S.Ct. 2145, 2155-56, 20 L.Ed.2d 1254, 1269 (1968). In Lambert v. People of the State of

5

California, 355 U.S. 225, 228, 78 S.Ct. 240, 242-243, 2 L.Ed.2d 228 (1957), the Supreme Court explicitly rejected Blackstone's view that a vicious will "is necessary to constitute a crime, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." Lambert, 355 U.S. at 228.

Importantly, the analysis in Garrison v. Trombley, 2009 WL 311102, 11 (E.D.Mich. 2009) is highly relevant in this case. Garrison applied the habeas corpus "test" of whether a state court decision is contrary to or unreasonably applies clearly established federal law, and determined that federal law is "clearly established" by holdings of the United States Supreme Court, as opposed to its *dicta*, as of the time of the relevant state court decision. Further, the habeas court may not look to lower federal court decisions for rules of decision establishing federal law. Thus, the rule sought by the petitioner must have been dictated or compelled by the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Harris v. Stovall, 212 F.3d 940, 943-44 (6th Cir. 2000); Staley v. Jones, 239 F.3d 769, 775 (6th Cir. 2001). Ergo, with respect to his arguments relating to due process, petitioner has not shown that his conviction without proof of *mens rea* or criminal intent is contrary to or an unreasonable application of clearly established federal

6

law, nor has he shown that reasonable jurists would agree that the State Court's decision is inconsistent with U.S. Supreme Court precedent. Nevertheless, the State will now address the issues suggested in this Court's order:

(1) WHETHER SECTION 893.13, FLORIDA STATUTES, RESULTS IN A "STRICT LIABILITY" OFFENSE?

The answer to this question is not a simple "yes" or "no," as suggested by Shelton. There are strict liability elements where it does not matter whether a convicted felon, for example, knows he is in possession of a firearm, or that the girl is under the age of consent. Another form of an implied intent is that which is transferred from the underlying felony in the felony murder rule. In fact, the felony murder rule is a widely accepted strict liability law with much harsher penalties than the typical drug offense. Then there are the mistake-of-law and mistake-of-fact defenses which, if applicable, are up to the defense to prove. The State does not have to disprove mistakes of fact or law, except in drug cases where a defendant actually raises his lack of knowledge as a defense to the crime. (See, for example, chapter 893) Additionally, the State does not have to disprove duress or necessity but it is up to the defendant to raise the issue, at which point the burden switches to the State. However, this is not true in intentional homicide cases; the "duress murderer" is held

7

strictly liable for conduct that this defense would normally excuse and does excuse in other contexts.

Someone prosecuted for a ch. 893 offense is not strictly liable, because lack of knowledge (i.e. mistake-of-fact) is still expressly an affirmative defense. If there were no such defense, so that criminal culpability attached even when a defendant argued he did not know of the illicit nature of a substance; then culpability would be "strict." However, under ch. 893 a defendant is always free to raise lack of knowledge as an affirmative defense, and must be acquitted upon a reasonable doubt as to knowledge.

Thus, the critical premise of Petitioner's argument – strict liability – is missing. Without this premise, the entire argument loses its constitutional dimension. Shelton is reduced to complaining that the Legislature has treated one aspect of the charged crime (knowledge) as an affirmative defense, and created a rebuttable presumption of knowledge once possession is proven. His remedy is before the Legislature, not the Court.

As the Florida Supreme Court has explained:

> It is within the power of the legislature to declare conduct criminal without requiring specific criminal intent to achieve a certain result[.]
> \* \* \*
> The question of whether conviction of a crime should require proof of a specific, as opposed to a general, criminal intent is a matter for the legislature to determine in defining the crime. The elements of a crime are derived from the statutory definition.

8

Reynolds v. State, 842 So.2d 46, 47-8 (Fla. 2002) [internal cite & quote omitted] (interpreting the animal cruelty statute [§828.12(2), Fla. Stat.] as creating a general intent crime, and holding that the "lack of a provision requiring specific intent to inflict pain does not render the statute unconstitutional"). See Wright v. State, 920 So.2d 21 (Fla. 4th DCA), rev. den., 915 So.2d 1198 (Fla. 2005) (noting that "[t]he legislature is vested with broad authority to determine intent requirements in defining crimes;" the applicable test is the rational basis standard of review; and concluding: "Clearly, there is a rational relationship between the legitimate governmental interest in addressing the drug problem and the elimination of the difficult-to-prove element of knowledge of a substance's illicit nature.").

Shelton argues in a footnote that even if the statute could somehow be converted to a general intent crime through the affirmative defense, it was still a "strict liability" offense as applied to Shelton because the jury was given no instruction regarding the significance of his alleged lack of knowledge. Shelton overlooks a Florida safeguard that a defendant is entitled to an instruction on his legally valid theory of defense. Shelton testified at trial that he never delivered ANY substance, illicit or not. (B 281) Thus, his theory of defense was that no money or substance existed or changed hands. Lack of knowledge was not his defense. He was thus not entitled to the instruction. He should

9

not now be permitted to argue that he was unaware of the illicit nature of a substance that he previously claimed did not exist. Of course, had Shelton claimed he delivered a substance he thought was powdered sugar, he would have been entitled to said defense and the instruction, which would have required the State to prove the element of knowledge.

It is the State's position that section 893.13 is clearly not a true strict liability offense. As such, it cannot be facially unconstitutional.


(2) WHETHER THE STATUTE IS FACIALLY UNCONSTITUTIONAL OR UNCONSTITUTIONAL AS APPLIED?

Assuming *arguendo* that further discussion is warranted, the Seventh Circuit in <u>Stepiniewski v. Gagnon</u>, 732 F.2d 567, 570-571 (7th Cir. 1984) succinctly summarized the High Court's position on strict liability offenses:

> A state or the federal government does not violate due process protections each time it chooses not to include intent to violate a regulation as an element of the crime. "The power of the legislature to declare an offense, and to exclude the elements of knowledge and due diligence from any inquiry as to its commission, cannot, we think, be questioned." <u>Chicago, B. & Q. Ry. v. United States</u>, 220 U.S. 559, 578, 31 S.Ct. 612, 617, 55 L.Ed. 582 (1911). Similarly, "[t]he objection that punishment of a person for an act as a crime when ignorant of the facts making it so, involves a denial of due process of law has more than once been overruled." <u>Williams v. North Carolina</u>, 325 U.S. 226, 238, 65 S.Ct. 1092, 1099, 89 L.Ed. 1577 (1945). Moreover, "public policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do

> them at his peril and will not be heard to plead in defense good faith or ignorance." <u>Shevlin-Carpenter Co. v. Minnesota</u>, 218 U.S. 57, 70, 30 S.Ct. 663, 666, 54 L.Ed. 930 (1910).
>
> The United States Supreme Court has not ruled specifically when, if ever, the imposition of strict liability in a criminal statute by itself violates the due process clause of the fourteenth amendment. The Supreme Court has recognized, however, that strict liability criminal offenses are not necessarily unconstitutional, <u>Lambert v. California</u>, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957), and that the federal courts should interpret a law as one of strict liability only when Congress clearly so intends. <u>Morisette</u>, 342 U.S. at 263, 72 S.Ct. at 249. In addition, the Court has stated that no single rule resolves whether a crime must require intent to be valid, "for the law on the subject is neither settled nor static."

<u>Id</u>. at 260, 72 S.Ct. at 248. Therefore, strict liability statutes are a violation of the due process clause and are not *per se* facially unconstitutional.

Shelton cites three decisions of the High Court, among others: <u>Morisette v. United States</u>, 342 U.S. 246 (U.S. 1952); <u>United States v. United States Gypsum Co.</u>, 438 U.S. 422 (1978); and <u>Staples v. United States</u>, 511 U.S. 600 (1994). All three cases construed a federal statute, but they did <u>not</u> construe or apply the due process clause of the federal constitution. In fact, <u>Morisette</u> does not mention the phrase "due process" at all; <u>Gypsum</u> mentions it twice but in different contexts, <u>Id.</u>, 438 U.S. at 428 and 447 n. 22; and only a dissenting justice in <u>Staples</u> mentions it, <u>Id.</u>, 511 U.S. at 637. In the face of congressional silence, the High Court construed the statutes in these three cases to include a mental

11

element: <u>Morisette</u> (intent to convert government property); <u>Gypsum</u> (intent to violate antitrust laws); and <u>Staples</u> (knew firearm was a machine gun).

Various factors commonly associated with strict liability crimes were discussed in these cases in an effort to divine congressional intent. These factors were not of constitutional dimension, as was explained by the Seventh Circuit in <u>Stepniewski</u> at 570:

> The district court read <u>Morisette</u> to establish, as a matter of constitutional law, three factors for determining whether the "nature and quality" of an offense precludes application of strict liability. The district court set those factors as: (1) whether the defendant is in a position to avoid transgressions by the exercise of reasonable care; (2) whether the penalty is relatively small; and (3) whether a conviction would result in no grave damage to the defendant's reputation.
>
> The district court incorrectly interprets <u>Morisette</u>. Although the <u>Morisette</u> court enunciated various factors, including those used by the district court, for federal courts to consider when reviewing statutes that arguably impose strict liability, the Court did not establish those factors as principles of constitutional law. Rather, the Court discusses the factors as general policy concerns which in part explain the historical development of strict liability crimes. **** The Court thus held that Congress' mere omission of intent from a statute punishing conversion of United States property would not be interpreted as the removal of intent element of the crime. Federal courts have applied these various factors when interpreting federal criminal statutes which the government sought to apply as strict liability offenses.

The legislative intent is, in contrast, very clear in this case. Shelton emphasizes that the High Court in <u>Staples</u> considered the penalty (up to 10 years' imprisonment) in divining

12

congressional intent.  Id. at 616.  Shelton, however, overlooks that the Court also stated, "**Of course, if Congress thinks it necessary to reduce the Government's burden at trial to ensure proper enforcement of the Act, it remains free to amend § 5861(d) by explicitly eliminating a *mens rea* requirement.**" Id. at 616 n. 11 (emphasis supplied).  See also State v. Giorgetti, 868 So.2d 512, 516 (Fla. 2004) ("An express provision dispensing with guilty knowledge will always control, of course, since in that instance the Legislature will have made its intent clear.").  Again, this further supports the argument that the Florida Statute in question is not facially unconstitutional.  Of course, as noted above, it is not unconstitutional as applied to Shelton because Shelton did not even argue lack of knowledge as a defense.

Shelton also cites a handful of federal cases, which the State submits are irrelevant under the appropriate standard of review and which incorrectly interpreted supreme court precedent.  All of these cases were decided prior to Staples in which the High Court actually invited Congress to amend the statute and expressly eliminate a *mens rea* requirement.  That invitation makes it clear that the omission of a culpable mental state does not offend the due process clause. Of course, Chapman v. United States, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) also makes it unmistakably clear that the issue of punishment is governed by the "cruel and unusual punishment" clause and not the due process

13

clause.

In actuality, strict liability crimes have no special status under the due process clause. A more detailed analysis of Stepniewski supra, is instructive. The defendant there was convicted of home improvement trade practice violations under Wisconsin law and sentenced on twelve counts to a total of seven years of incarceration, stayed by probation, plus an additional six months of incarceration as a habitual criminal. Id., 732 F.2d at 568. The Wisconsin Supreme Court had concluded that "mere failure to obey the regulation can result in conviction." Id. at 569. The Seventh Circuit held that the defendant's convictions, without proof of criminal intent, did not offend the due process clause. It reasoned:

> To determine the constitutionality of Section 100.26(3), **we apply basically the same standards applicable to criminal statutes which do not impose strict liability**. Due process prohibits such statutes from shifting burdens of proof onto the defendant, prohibits punishment of wholly passive conduct, protects against vague or overbroad statutes, and requires that statutes must give fair warning of prohibited conduct. The due process clause imposes little other restraint on the state's power to define criminal statutes. [internal citations omitted]

Id. at 571, (emphasis supplied)

As to the prohibition of shifting the burden of proof, the High Court in Patterson v. New York, 432 U.S. 197 (1977) held that the State could place the burden on the defendant to prove that he killed the victim while under the influence of extreme emotional

distress to mitigate his conduct from murder to manslaughter. The Seventh Circuit in Stepniewski concluded that "removing the element of intent for the offense does not amount to shifting the burden of proof; rather, the state has chosen to redefine what conduct violates the statute," and "[t]he state still must prove each element of the strict liability crime beyond a reasonable doubt." Id. at 571.

United States v. Balint, 258 U.S. 250 (1922) is also instructive. The defendant there was indicted for selling opium and a derivative of coca leaves without a written order in violation of the federal narcotic act. The defendant moved to dismiss the indictment "on the ground that it failed to charge that they had sold the inhibited drugs knowing them to be such." The trial court granted the motion, but the High Court reversed, reasoning in part as follows:

> It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of the due process of law. But that objection is considered and overruled in Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 69, 70, 30 Sup. Ct. 663, 666 (54 L. Ed. 930), in which it was held that in the prohibition or punishment of particular acts, the state may in the maintenance of a public policy provide 'that **he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.**'

Id. at 252. (emphasis supplied)...

> [The manifest purpose of the federal narcotic act] is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited

15

> drug in ignorance of its character, to penalize him. Congress weighed the possible injustice of subjecting an innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug, and concluded that the latter was the result preferably to be avoided. Doubtless considerations as to the opportunity of the seller to find out the fact and the difficult of proof of knowledge contributed to this conclusion. We think the demurrer to the indictment should have been overruled.

Id. at 254.

As was previously discussed, Shelton in the instant case did have the opportunity to plead ignorance of the nature of the substance he delivered and sold. No strict liability, therefore, applied to that element. To be sure, had Shelton pled ignorance that he sold the drugs within 1,000 feet of a school or church, he could not claim a due process violation for the lack of that knowledge either. See Rice v. State, 754 So.2d 881, 884 (Fla. 5DCA 2000) (statute prohibiting making, possessing, delivering, or selling a controlled substance within 1,000 feet of a place of worship does not violate due process); Hobby v. State, 761 So.2d 1234, 1237 (Fla. 2DCA 2000) (same); State v. Burch, 545 So.2d 279, 283 (Fla. 4DCA 1989) (statute prohibiting sale or purchase of cocaine within 1,000 feet of a school does not violate due process, though it does not require proof that defendant intended to sell within 1,000 feet of a school); United States v. Pitts, 908 F.2d 458, 461 (1990) (statute prohibiting sale of drugs within 1,000 feet of school does not violate due process, though it does not require proof that defendant had actual knowledge of proximity of

school); and United States v. Cross, 900 F.2d 66, 69 (1990) (same).

In federal cases, the State suggests that knowledge of the illicit nature of a substance can be inferred from mere possession. Historically, a defendant has been free to challenge either the inference of illegal importation or the inference of his knowledge of that fact, or both. See Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 564 (1959); Roviaro v. United States, 353 U.S. 53, 63, 77 S.Ct. 623, 629 (1957); Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 472 (1925). Even when the defendant challenges the validity of the inference as applied to his case, the instruction on the statutory inference is normally given. See Turner v. U.S., 396 U.S. 398, 406, 90 S.Ct. 642, 647 (U.S.N.J. 1970)

Thus, the statute was not unconstitutional as applied; lack of knowledge was not pled and his sentence was the result of the habitual violent offender statute.


(3) THEREFORE, THE DECISION BELOW DID NOT RESULT IN A HOLDING THAT WAS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF UNITED STATES SUPREME COURT PRECEDENT.

As noted above, the U.S. Supreme Court has recently ruled that the "due deference" requirement means that Petitioner must prove the State ruling is inconsistent with U.S. Supreme Court precedent and reasonable jurists would not disagree regarding said

inconsistency.  Thus, because the U.S. Supreme Court has explicitly held that the legislature's abolition of a *mens rea* requirement does not render a criminal statute unconstitutional, this claim must fail.  Moreover, the U.S. Supreme Court has suggested that the legislature could do away with a *mens rea* requirement.  Shelton also contends that the statute violates due process because its penalties are too harsh.  This claim is much more closely aligned to the actual issue raised by Shelton in State court.  Nevertheless, Respondent's suggest this is a matter of State law and Shelton's status as a habitual violent felony offender skews the constitutional analysis.  Shelton was convicted of a second degree felony, punishable by up to 15 years.  With the exception of researchers or in highly regulated conditions, the possession of cocaine is never legal.  The statute does not punish legal conduct, and it permits an accused to argue lack of knowledge.  The sentence is not unreasonably harsh and it does not prohibit legal conduct.  It is not unconstitutional.

Even so, in Florida, the mere possession of cocaine is the lowest class felony.  This is no doubt a universally accepted classification for the mere possession of cocaine.  It stands to reason then, that the sale or delivery of cocaine should be a more severe offense.  It is therefore the next most severe felony, punishable by up to 15 years.  Shelton, however, is a habitual and violent felon and it is this fact alone which allows a more severe

penalty in this case. The length of Shelton's sentence is not a direct result of or reasonably related to the alleged infirmity in chapter 893. The statute is not unconstitutional because higher sentences are imposed for trafficking amounts or for repeat offenders. Relatively "harsh" minimum mandatory or enhanced sentences are widely enforced across the nation; they are not unconstitutional simply by virtue of the length of the possible sentence. Nor are they unconstitutional merely because lack of knowledge is not an element of the crime; for example, any criminal defendant may claim that he did not know about the gun, the drugs, that the property was stolen, or claim that he forgot to pay for an item. At that point, in a circumstantial evidence case, the State must rebut any reasonable hypothesis of innocence, such as the lack of knowledge.

In summary, the State iterates that the statute does not describe a true strict liability offense – thus the allegation that its penalties are too severe lacks any legal foundation. The severe punishment under the chapter relates to repeat offenders and trafficking amounts. In addition, the State suggests that Shelton, who is a Habitual Violent Felony Offender, has already voluntarily "besmirched" his reputation long before the lack of *mens rea* was made an affirmative defense. Reasonable jurists would not collectively conclude that the State law decisions are inconsistent with established U.S. Supreme Court precedent. The State Court

19

rulings should be upheld.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL


/s Carmen F. Corrente
CARMEN F. CORRENTE
ASSISTANT ATTORNEY GENERAL
Fla. Bar #304565
444 Seabreeze Boulevard
Fifth Floor
Daytona Beach, FL   32118
FAX:  (386) 238-4997
TEL:  (386) 238-4990

COUNSEL FOR RESPONDENTS

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing supplemental memorandum in case number 6:07-cv-839-Orl-31KRS has been electronically filed this date by using the CM/ECF system.  I further certify that I furnished a copy of this response via U.S. Mail to James E. Felman, counsel for Petitioner, Post Office Box 3396, Tampa, FL  33601-3396 and to Todd Foster, counsel of record, 201 E. Kennedy Blvd., Suite 100, Tampa, FL  33602  this 18th  day of April, 2011.

/s Carmen F. Corrente
CARMEN F. CORRENTE
ASSISTANT ATTORNEY GENERAL