# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MACKLE VINCENT SHELTON,**

      **Petitioner,**

**v.**                                     **Case No.: 6:07-cv-839-Orl-35-KRS**

**SECRETARY, DEPARTMENT OF
CORRECTIONS, *et. al.*,**

      **Respondents.**
_____/

# ORDER

**THIS CAUSE** comes before the Court for consideration of Mackle Vincent Shelton's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Dkt. 1); the response filed in opposition thereto (Dkt. 7); Petitioner's Reply (Dkt. 11); the parties' Supplemental Memoranda (Dkts. 25, 31, 36); and the Amicus Brief filed in support of Petitioner. (Dkt. 28) On May 13, 2002, the Florida Legislature enacted changes to Florida's Drug Abuse Prevention and Control law, FLA. STAT. § 893.13, as amended by FLA. STAT. § 893.101. By this enactment, Florida became the only state in the nation expressly to eliminate *mens rea* as an element of a drug offense. This case, challenging the constitutionality of that law, was filed following Plaintiff's conviction for delivery of cocaine without the jury being required to consider his intent in any respect[1] and the subsequent imposition of an eighteen year sentence following his conviction. Upon consideration of all relevant filings, case law, and being otherwise fully advised,

_____
[1] Because Petitioner did not assert lack of knowledge of the illicit nature of a controlled substance as an affirmative defense (See Fla. Stat. § 893.101(2)), the jury was instructed that it must convict Petitioner upon sufficient proof that Petitioner had, in fact, delivered cocaine. The applicable instruction required no other proof or finding. (See Dkt. 8 at B. 338)

the Court **GRANTS** Petitioner's request for habeas relief (Dkt. 1), and finds that FLA. STAT. § 893.13 is unconstitutional on its face.

## I.   BACKGROUND

### A.  Florida's Legislative Scheme

*"Actus non facit reum nisi mens sit rea"* - - except in Florida.[2]

Prior to May 2002, Florida law provided, <u>inter alia</u>:

> (1)(a) Except as authorized by this chapter and chapter 499, it is unlawful for any person to sell, manufacture, or deliver,[3] or possess with intent to sell, manufacture, or deliver, a controlled substance. Any person who violates this provision with respect to:
>
> > 1. A controlled substance named or described in s. 893.03(1)(a), (1)(b), (1)(d), (2)(a), (2)(b), or (2)(c) 4., commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
> >
> > . . .
>
> (6)(a) It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter. Any person who violates this provision commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

FLA. STAT. § 893.13(1)(a),(6)(a) (2000).

Addressing whether § 893.13 included guilty knowledge as an element of the offense, the Florida Supreme Court opined:

> We believe it was the intent of the legislature to prohibit the knowing possession of illicit items and to prevent persons from doing so by attaching a substantial criminal penalty to such conduct.  Thus, we hold

---

[2] Florida exempts itself from the age-old axiom: "The act does not make a person guilty unless the mind be also guilty."

[3] "Deliver" or "delivery" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."  FLA. STAT. § 893.02(6).

that the State was required to prove that Chicone knew of the illicit nature of the items in his possession.

Chicone v. State, 684 So. 2d 736, 744 (Fla. 1996).  Additionally, the Florida Supreme Court held that "it was error for the trial court to deny Chicone's request for a special jury instruction on knowledge."  Id. at 746.  Subsequently, in Scott v. State, 808 So. 2d 166, 170-72 (Fla. 2002), the Florida Supreme Court made clear that "knowledge is an element of the crime of possession of a controlled substance, a defendant is entitled to an instruction on that element, and . . . [i]t is error to fail to give an instruction even if the defendant did not explicitly say he did not have knowledge of the illicit nature of the substance."

In direct and express response to the Court's holdings in Chicone and Scott, in May 2002, the Florida legislature enacted amendments to Florida's Drug Abuse Prevention and Control law:

> (1) The Legislature finds that the cases of Scott v. State, Slip Opinion No. SC94701 (Fla. 2002) and Chicone v. State, 684 So. 2d 736 (Fla. 1996), holding that the state must prove that the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent.
>
> (2) The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.
>
> (3) In those instances in which a defendant asserts the affirmative defense described in this section, the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance. It is the intent of the Legislature that, in those cases where such an affirmative defense is raised, the jury shall be instructed on the permissive presumption provided in this subsection.

FLA. STAT. § 893.101.  As explained by one Florida court:

The statute does two things: it makes possession of a controlled substance a general intent crime, no longer requiring the state to prove that a violator be aware that the contraband is illegal, and, second, it allows a defendant to assert lack of knowledge as an affirmative defense. There is a caveat that, once this door is opened, either actual or constructive possession of the controlled substance will give rise to a permissive presumption that the possessor knew of the substance's illicit nature, and the jury instructions will include this presumption. The knowledge element does not need to be proven, but if the defendant puts it at issue, then the jury is going to hear about it, and the defendant must work to rebut the presumption.

Wright v. State, 920 So. 2d 21, 24 (Fla. 4th DCA 2005) (internal citation omitted).

Not surprisingly, Florida stands alone in its express elimination of *mens rea* as an element of a drug offense.[4] Other states have rejected such a draconian and unreasonable construction of the law that would criminalize the "unknowing" possession of a controlled substance. See, e.g., State v. Bell, 649 N.W. 2d 243, 252 (N.D. 2002) (noting the legislature amended North Dakota's drug laws in 1989 to include the culpability requirement of "willfully" as an element of the offense of possession of a controlled substance, thereby eliminating possession as a strict liability offense); State v. Brown, 389 So. 2d 48, 51 (La. 1980) (concluding drug possession cannot be a strict liability crime because it would impermissibly criminalize unknowing possession of a controlled substance and permit a person to be convicted "without ever being aware of the nature of the substance he was given."). In stark contrast, under Florida's statute, a

---

[4] The State of Washington adopted the Uniform Controlled Substances Act, but its legislature has deleted the "knowingly and intentionally" language from the model act's mere possession statute. See WASH, REV. CODE §§ 69.50.41, 69.50.603. Thus, *mens rea* was eliminated as an element of the offense of possession of a controlled substance under Washington law by implication not express intent of the legislature. See State v. Bradshaw, 98 P.3d 1190, 1194-95 (Wash. 2004). North Dakota had done so but retreated from this unwise course in 1989 by abandoning a strict liability regime and amending its drug laws to include the culpability requirement of "willfully" as an element of the offense. State v. Bell, 649 N.W. 2d 243, 252 (2002) (citing N.D. CENT. CODE § 19-03.1-23).

person is guilty of a drug offense if he delivers a controlled substance without regard to whether he does so purposefully, knowingly, recklessly, or negligently. Thus, In the absence of a *mens rea r*equirement, delivery of cocaine it is a strict liability crime under Florida law. See FLA. STAT. §§ 893.101, 893.13.[5]

### B. This Lawsuit and Petitioner's Claims

Petitioner was arrested on October 5, 2004, and charged with eight counts: three counts of aggravated assault with a deadly weapon (Counts I-III); delivery of cocaine (Count IV); one count of fleeing or attempting to elude a law enforcement officer (Count V); driving while license suspended (Count VI); reckless driving causing damage to property or a person (Count VII); and, two counts of criminal mischief (Counts VIII and IX). (Dkt. 8 at A. 39-47) Following a jury trial on June 1, 2005, Petitioner was found guilty as to Counts IV, V, VI, VII, and IX. (Id. at 182; Dkt. 8 at B. 351-53) Because Petitioner was convicted of Count IV—delivery of cocaine—after the May 2002 changes to Florida's Drug Abuse Prevention and Control law, the jury was not instructed as to knowledge as an element of that offense. (See Dkt. 8 at B. 338) Rather, on Count IV, the jury was simply instructed as follows:

> To prove the crime of delivery of cocaine, the State must prove the following two elements beyond a reasonable doubt:
>
> [1] That Mackle Vincent Shelton delivered a certain substance; and,
>
> [2] That the substance was cocaine.

---

[5] See also U.S. v. Harris, 608 F.3d 1222, 1231 (11th Cir. 2010) (recognizing the three broad categories of crimes under Florida law: "(1) 'strict liability' crimes (e.g., DWI manslaughter or statutory rape) which are criminal violations even if done without intent to do the prohibited act; (2) general intent crimes; and (3) specific intent crimes.") (quoting Linehan v. State, 442 So.2d 244, 247 (Fla. 2d DCA 1983)).

"Deliver" or "Delivery" means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship.

(Dkt. 8 at B. 338)

Petitioner was declared an Habitual Felony Offender pursuant to FLA. STAT. § 775.084 and sentenced to eighteen years in prison. (Dkt. 8 at A. 179-80, 219) Petitioner appealed his sentence and conviction and Florida's Fifth District Court of Appeal affirmed *per curiam*. See Shelton v. State, 932 So. 2d 212 (Fla. 5th DCA 2006). On August 22, 2006, Petitioner filed a Motion for Post-Conviction Relief pursuant to FLA. R. CRIM. P. 3.850. (Dkt. 8 at E.) The trial court denied Petitioner's Motion for Post-Conviction Relief, and Florida's Fifth District Court of Appeal affirmed on March 6, 2007. See Shelton v. State, 951 So. 2d 856 (Fla. 5th DCA 2007). (Dkt. 8 at F.) Notably, neither of the appellate decisions analyzed or discussed the federal constitutional issue raised by Petitioner—each court simply affirmed the decisions below. See Shelton v. State, 951 So. 2d 856; see also Shelton v. State, 932 So. 2d 212. On May 18, 2007, Plaintiff filed the instant petition for federal habeas corpus relief. (Dkt. 1)

Petitioner advances nine grounds as a basis for habeas relief. (See Dkt. 1 at 5-35) Of initial importance here is ground one, Petitioner's claim that FLA. STAT. § 893.13 is facially unconstitutional because it entirely eliminates *mens rea* as an element of a drug offense and creates a strict liability offense under which Petitioner was sentenced to eighteen years in prison. (Dkt. 1 at 5) Petitioner's remaining grounds, none of which provides a sufficient basis to overturn his conviction or alter his sentence, are discussed in section II(D) infra.

6

## II.  LEGAL STANDARDS AND ANALYSIS

### A.  Habeas Relief Pursuant to 28 U.S.C. § 2254

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law."  Harrington v. Richter, 131 S. Ct. 770, 780 (2011).  Pursuant to 28 U.S.C. § 2254(a), a district court may grant an application for writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under certain circumstances, a district court must grant deference to the state court's decision:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt."  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (internal citations and quotation marks omitted).

At the time the instant petition was filed, the applicable standard of review was in dispute.  (See Dkt. 7 at 4-7; Dkt. 11 at 5-6; Dkt. 25 at 21-25; Dkt. 36 at 1-7)   However, as predicted by Petitioner in his Supplemental Memorandum (See Dkt. 25 at 21-22), in January 2011, the United States Supreme Court held:

> When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits ***in the absence of any indication or state-law procedural principles to the contrary***.

Harrington, 131 S. Ct. at 784-85 (emphasis added).  State-law procedural principles in Florida provide that a *per curiam* affirmance has no precedential value and is not an adjudication on the merits.  Dep't of Legal Affairs v. Dist. Court of Appeal, 5th Dist., 434 So. 2d 310, 311 (Fla. 1983).  As noted in the procedural history in section I(B), supra, Florida's Fifth District Court of Appeal issued decisions affirming the rulings of the trial court without opinion and without a merits-based analysis of the federal constitutional claims, and thus its *per curiam* affirmances do not constitute an adjudication of Petitioner's facial challenge to the constitutionality of FLA. STAT. § 893.13 on the merits.  See Harrington, 131 S. Ct. at 784-85; see also Dep't of Legal Affairs, 434 So. 2d at 311.  Therefore, no deference is due to the state court's decision.  See id.

As such, this Court reviews *de novo* Plaintiff's constitutional challenge to FLA. STAT. § 893.13, as amended by § 893.101, and finds the statute to be facially unconstitutional, as it is violative of the Constitution's due process clause.[6]

### B. FLA. STAT. § 893.13 is Facially Unconstitutional Because it Results in a Strict Liability Offense With a Harsh Penalty, Stigma, and Overbroad Regulation of Otherwise Innocuous Conduct

Petitioner's facial challenge to Florida's drug statute is properly premised on allegations that the State's affirmative elimination of *mens rea* and *scienter* from this felony offense violates due process.

---

[6] The same result would obtain under a deferential standard as the legal authority relied upon herein has long established that some level of culpable *scienter* is an essential element of any felony offense that punishes otherwise innocuous conduct, carries substantial penalties and imposes grievous stigma.  In the absence of an articulated basis to ignore these settled principles and precedents, the state decision cannot stand.

The requirement to prove some *mens rea* to establish guilt for conduct that is criminalized is firmly rooted in Supreme Court jurisprudence and, as reflected in the ineffectual response by the State to this petition, cannot be gainsaid here. Well established principles of American criminal law provide:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. . . . [T]o constitute any crime there must first be a 'vicious will.'

Morissette v. United States, 342 U.S. 246, 250 (1952).

To be sure, the law recognizes the authority of government to fashion laws that punish without proof of intent, but not without severe constraints and constitutional safeguards. As the Supreme Court explained:

> [T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.

> This view may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes. **But there are obviously constitutional limits beyond which the States may not go in this regard.**

Patterson v. New York, 432 U.S. 197, 210 (1977) (evaluating New York's murder and manslaughter statutes and the requirements for proving the affirmative defense of acting under the influence of extreme emotional distress). Thus, while the State is

correct that the legislature has the authority to declare the elements of an offense, it "must act within any applicable constitutional constraints in defining criminal offenses." Jones v. United States, 526 U.S. 227, 241 (1999). As discussed further, infra, a strict liability offense has only been held constitutional if: (1) the penalty imposed is slight; (2) a conviction does not result in substantial stigma; and (3) the statute regulates inherently dangerous or deleterious conduct. See Staples v. United States, 511 U.S. 600, 619-20 (1994).

Because it is rare that a legislative body would deign to expunge knowledge or intent from a felony statute expressly, as the Florida legislature has done here, the issue typically arises where a statute is silent as to knowledge and the courts are called upon to determine whether knowledge is a prerequisite to the constitutional enforcement of the challenged statute. In such cases, courts engraft a knowledge requirement to cure the statute's infirmity and follow the common-law presumption[7] against penalizing

---

[7] A full explication of the elimination of mens rea as atavistic and repugnant to the common law is eloquently and thoroughly set forth in the memorandum filed by Amici Curiae, National Association of Criminal Defense Lawyers, Florida Association of Criminal Defense Lawyers, American Civil Liberties Union of Florida, Drug Policy Alliance, Calvert Institute for Policy Research, and thirty-eight Professors of Law: (1) Bridgette Baldwin (W. New England Coll. Sch. of Law); (2) Ricardo J. Bascuas (Univ. of Miami Sch. of Law); (3) Caroline Bettinger-López (Univ. of Miami Sch. of Law); (4) Guyora Binder (Univ. at Buffalo Law Sch.); (5) Jennifer Blasser (Benjamin N. Cardozo Sch. of Law); (6) Vincent M. Bonventre Albany Law Sch.); (7) Tamar R. Birckhead, (Univ. of N.C. Sch. of Law); (8) Darryl K. Brown (Univ. of Va. Sch. of Law); (9) Paul Butler (The Geo. Wash. Univ. Law School); (10) Michael Cahill (Brooklyn Law Sch.); (11) Matthew H. Charity (W. New England Coll. Sch. of Law); (12) Lucian E. Dervan (S. Ill. Univ. Sch. of Law); (13) William V. Dunlap (Quinnipiac Univ. Sch. of Law); (14) Sally Frank (Drake Univ. Law Sch.); (15) Monroe H. Freedman (Hofstra Univ. Sch. of Law); (16) Bennett L. Gershman (Pace Law Sch.); (17) Andrew Horwitz (Roger Williams Univ. Sch. of Law) (18) Babe Howell (CUNY Sch. of Law); (19) Renée Hutchins (Univ. of Md. Sch. of Law); (20) John D. King (Wash. & Lee Univ. Sch. of Law); (21) Jeffrey L. Kirchmeier (CUNY Sch. of Law); (22) Richard Daniel Klein (Touro Coll. Jacob D. Fuchsberg Law Ctr.) (23) Kelly S. Knepper-Stephens (The Geo. Wash. Univ. Law School); (24) Alex Kreit (Thomas Jefferson Sch. of Law); (25) Donna Hae Kyun Lee (CUNY Sch. of Law); (26) Mary A. Lynch, (Albany Law Sch.); (27) Dan Markel (Fla. State Univ. Coll. of Law) (28) Ellen S. Podgor (Stetson Univ. Coll. of Law); (29) Martha Rayner (Fordham Univ. Sch. of Law); (30) Ira P. Robbins (Am. Univ. Wash. Coll. of Law); (31) Jenny M. Roberts (Am. Univ. Wash. Coll. of Law); (32) Ronald Rotunda (Chapman Univ. Sch. of Law); (33) Stephen A. Saltzburg (The Geo. Wash. Univ. Law Sch.); (34) William A. Schroeder (S. Ill. Univ. Sch. of Law); (35) Michael L. Seigel (Univ. of Fla. Levin Coll. of Law); (36) Laurie Shanks (Albany Law

defendants who have "knowledge only of traditionally lawful conduct." <u>Staples</u>, 511 U.S. at 618.

In the seminal case on this issue, <u>Staples</u>, the United States Supreme Court held that under the National Firearms Act, 26 U.S.C. § 5861(d), which establishes a ten-year maximum sentence for a person who possesses a machine gun that is not properly registered, the government must prove that the defendant knew that the gun was a machine gun. <u>Id.</u> at 602. The Supreme Court explained that when a statute is silent as to the mental state required for a violation, the existence of a *mens rea* requirement is the rule rather than the exception. <u>Id.</u> at 605. It also explained that without such a requirement in § 5861(d), the statute potentially would impose criminal sanctions on innocent persons. <u>Id.</u> at 614-15. Further, the Supreme Court emphasized that the potentially harsh penalty attached to a statutory violation supported a *mens rea* requirement. <u>Id.</u> at 616.

Subsequently, in <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64, 68 (1994), the Supreme Court considered whether knowledge should be an element of an offense under 18 U.S.C. § 2252, which prohibits the transportation, shipping, reception, or distribution of pornography produced using underage individuals. Although the statute contained the word "knowingly," the Ninth Circuit reasoned that the placement of the word was such that it modified transportation, distribution and receipt, but it did require knowledge by the defendant that the visual depictions involved minors. The Ninth Circuit, finding that there was no *scienter* requirement as to the age of the performers in

---

Sch.); (37) Rodney Uphoff (Univ. of Mo. Sch. of Law); (38) Ellen C. Yaroshefsky (Benjamin N. Cardozo Sch. of Law). (<u>See</u> Dkt. 28 at 26-30)

the videos, struck down the statute as a violation of the First Amendment.  United States v. X-Citement Video, Inc., 982 F.2d 1285 (9th Cir. 1992).

Applying its analysis in Staples, the Supreme Court examined the presumption that "some form of *scienter* is to be implied in a criminal statute even if not expressed" and, because of the added constitutional dimension "a statute is to be construed where fairly possible so as to avoid substantial constitutional questions."  X-Citement Video, 513 U.S. at 69. Thus, the Supreme Court read Staples and its antecedents as "instruct[ing] that the presumption in favor of a *scienter* requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct."  Id. at 72. Because "the age of the performers is the crucial element separating legal innocence from wrongful conduct," the Supreme Court found a strong presumption in favor of a *scienter* requirement as to that element.  Id. at 73.  The Court reasoned that this presumption was further necessitated because "a statute completely bereft of a *scienter* requirement as to the age of the performers would raise serious constitutional doubts."  Id. at 78.  Thus, the Court found it "incumbent upon [itself] to read the statute to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress." Id.[8]

From this body of law it is clear that while "strict liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements," their use is very limited and they are accorded a "generally disfavored status."  United

---

[8] Of course, where, as here, the legislative intent clearly eliminates the *mens rea* requirement, the Court is powerless to cure the statute by engrafting a knowledge requirement that is squarely contrary to that intent.  See FLA. STAT. § 893.101. It is precisely that act of engrafting that prompted the legislature to amend the statute. Thus, the Court must consider the statute's constitutionality bereft of *mens rea*.

States v. U.S. Gypsum Co., 438 U.S. 422, 437-38 (1978). The Supreme Court has upheld strict liability offenses in "public welfare" cases which involve statutes that regulate inherently dangerous items/conduct and which provide for only slight penalties, such as fines or short jail sentences. See, e.g., United States v. Balint, 258 U.S. 250, 256 (1922). In such cases, there is no due process violation because "the accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." Id. Thus, under Staples and its progeny, the tripartite analysis for evaluating a strict liability offense under the strictures of the Constitution involves consideration of: (1) the penalty imposed; (2) the stigma associated with conviction; and (3) the type of conduct purportedly regulated. Staples, 511 U.S. at 619-20.

Evaluated under this framework, the Florida drug statute fails completely.

## 1. Section 893.13 Violates Due Process Because its Penalties are Too Severe

It cannot reasonably be asserted that the penalty for violating Florida's drug statute is "relatively small." A violation of § 893.13(1)(a)(1), for delivery of a controlled substance as defined in Schedule I, FLA. STAT. 893.03(1), is a second degree felony, ordinarily punishable by imprisonment for up to fifteen years. FLA. STAT. § 775.082(3)(c). For habitual violent felony offenders, such as Petitioner, a violation of § 893.13(1)(a)(1) is punishable by imprisonment for up to thirty years and includes a ten-year mandatory minimum sentence. See FLA. STAT. § 775.084(1)(b). Other provisions of Florida's drug statute subject offenders to even harsher penalties,

including ordinary imprisonment for thirty years for first time offenders and life imprisonment for recidivists. See, e.g., FLA. STAT. §§ 893.13(1)(b) (delivery of more than 10 grams of a schedule I substance); § 893.13(1)(c) (delivery of cocaine within 1,000 feet of a child care facility, school, park, community center, or public recreational facility).

No strict liability statute carrying penalties of the magnitude of FLA. STAT. § 893.13 has ever been upheld under federal law. In fact, the Supreme Court has considered a penalty of up to three years' imprisonment or a fine not exceeding $100,000.00 too harsh to impose on a strict liability offense. See Gypsum, 438 U.S. at 442. In Gypsum, the Supreme Court considered the penalties for an individual violation of the Sherman Antitrust Act and opined, "[t]he severity of these sanctions provides further support for our conclusion that the [Act] should not be construed as creating strict-liability crimes." Id. Similarly, in Staples, the Supreme Court declined to construe the National Firearms Act as a strict liability statute given its "harsh" penalty of up to ten years' imprisonment. Staples, 511 U.S. at 616. As the Supreme Court explained:

> The potentially harsh penalty attached to violation of § 5861(d)-up to 10 years' imprisonment-confirms our reading of the Act. Historically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with *mens rea.* Certainly, the cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary.

Id. Other federal courts have reached similar conclusions regarding even lighter penalties. For example, in United States v. Wulff, 758 F.2d 1121 (6th Cir. 1985), the Sixth Circuit concluded the felony provision of the Migratory Bird Treaty Act ("MBTA")

was unconstitutional where the maximum penalty was two years' imprisonment. Specifically, the Sixth Circuit recognized that a two-year sentence was not "relatively small" and that a felony conviction "irreparably damages one's reputation." Id. at 1125. The District Court for the District of South Dakota reached exactly the same conclusion in its analysis of the same MTBA felony provision. See United States v. St. Pierre, 578 F. Supp. 1424, 1429 (D. S.D. 1983).

While the same two-year strict liability provision was subsequently upheld by the Third Circuit, the court considered the constitutional question an extremely close call. See United States v. Engler, 806 F.2d 425, 431-35 (3d Cir. 1986). For the Third Circuit, the difference between the one-year penalty under the misdemeanor provision, which had been upheld in Wulff, and the two-year penalty under the felony provision was so slight "that the analysis takes place on a very slippery slope with too much 'in the eye of the beholder.'" Id. at 435. Thus, the Third Circuit opted to permit a penalty of two years' imprisonment for strict liability offenses that are part of "a regulatory measure in the interest of public safety, which may well be premised on the theory that one would hardly be surprised to learn that [the prohibited conduct] is not an innocent act." Id. (quoting United States v. Freed, 401 U.S. 601, 609 (1971)). Because the "capture and sale of species protected by the MBTA is not 'conduct that is wholly passive,' but more closely resembles conduct 'that one would hardly be surprised to learn . . . is not innocent,'" the Third Circuit upheld the constitutionality of the MTBA's two-year penalty. Id. at 435-36.

Thus, while the Third and Sixth Circuits disagree over whether the outer bounds of due process lie at a one or two-year strict liability sentence, the State does not cite,

and the Court has not located, any precedent applying federal law to sustain a penalty of fifteen years, thirty years, and/or life imprisonment for a strict liability offense. In fact, at least one Circuit Court of Appeals has expressly stated that a twenty-year strict liability provision would be unconstitutional. See United States v. Heller, 579 F.2d 990 (6th Cir. 1978). In Heller, the Sixth Circuit considered an interstate extortion/kidnapping statute that was silent regarding *mens rea* and carried a maximum penalty of twenty years' imprisonment. Id. at 993. The Sixth Circuit held that a *mens rea* element must be inferred by judicial construction because the statute would otherwise violate due process. Id. at 994 (elucidating, "if Congress attempted to define a Malum prohibitum offense that placed an onerous stigma on an offender's reputation and that carried a severe penalty, the Constitution would be offended[.]").

The State offers no safe harbor for Florida's drug statute on this point. (See Dkt. 7; Dkt. 36) Instead, the State suggests that the statute is not unconstitutional as applied because Petitioner's "sentence is not the direct result of or reasonably related to the alleged infirmity in chapter 893." (Dkt. 36 at 19) Rather, the State contends Petitioner's "sentence was the result of the habitual violent offender statute." (Id. at 17) This argument is flawed in three respects. First, Petitioner asserts a facial challenge to Florida's drug statute, not an as-applied challenge as the State implies. Second, Petitioner's "enhanceable" status was triggered by his conviction under § 893.13, a facially unconstitutional statute. Thirdly, the fifteen-year maximum sentence that the statute imposes is not "relatively small" even when considered without regard to the enhancement Petitioner faced, and it cannot reasonably be contended otherwise.

As Petitioner so aptly explained, "a ruling upholding penalties on the order permitted by the statute would leave literally nowhere else to go to draw a meaningful Constitutional line. Even if there is uncertainty about precisely where this line is drawn, that hardly matters here because by any measure sentences of fifteen years to life are on the wrong side of it." (Dkt. 25 at 11) The Court agrees. Sentences of fifteen years, thirty years, and life imprisonment are not by any measure "relatively small." Accordingly, the Court concludes that the penalties imposed by Florida's strict liability drug statute are too severe to pass constitutional muster, and doubly so when considered in conjunction with the other two factors in the tripartite analysis.

### 2. Section 893.13 Violates Due Process Because it Creates Substantial Social Stigma

In this regard, there can be little question that a conviction for a second degree felony coupled with a sentence of fifteen to thirty years tends to "gravely besmirch" a person's reputation. As the Supreme Court noted, a felony is "as bad a word as you can give to a man or thing." Morissette, 342 U.S. at 260. Convicted felons cannot vote, sit on a jury, serve in public office, possess a firearm, obtain certain professional licenses, or obtain federal student loan assistance. The label of "convicted felon" combined with a proclamation that the defendant is so vile that he must be separated from society for fifteen to thirty years, creates irreparable damage to the defendant's reputation and standing in the community. This social stigma precludes, for example, the ability of a convicted felon to reside in any neighborhood of his choosing or to obtain certain employment.

The State offers little argument on this point, stating only "that Shelton, who is a Habitual Violent Felony Offender, has already voluntarily besmirched his reputation long before the lack of *mens rea* was made an affirmative defense." (Dkt. 36 at 19) Again, Petitioner is not raising an as-applied challenge to Florida's Drug Abuse Prevention and Control law, so his particular past criminal history is irrelevant to the issue of whether a second degree felony conviction besmirches an individual's reputation. Moreover, habitual offender status occasioned by a conviction under this unconstitutional statute further marred the Petitioner's already sullied character. The Court finds, therefore, if it does not go without saying, that a felony conviction under Florida's strict liability drug statute gravely besmirches an individual's reputation. See Heller, 579 F.2d at 995.

### 3. Section 893.13 Violates Due Process Because it Regulates Inherently Innocent Conduct

Finally, Florida's strict liability drug statute also runs afoul of due process limits when viewed from the perspective of the nature of the activity regulated. Where laws proscribe conduct that is neither inherently dangerous nor likely to be regulated, the Supreme Court has consistently either invalidated them or construed them to require proof of *mens rea* in order to avoid criminalizing "a broad range of apparently innocent conduct." Liparota v. United States, 471 U.S. 419, 426 (1985). Under this reasoning, not even a small criminal penalty may constitutionally be imposed without proof of guilty knowledge where the conduct at issue includes a wide array of innocuous behavior or behavior not inherently likely to be regulated. See Lambert v. California, 355 U.S. 225 (1958).

In <u>Lambert</u>, the Supreme Court held that a strict liability felon registration ordinance, punishable by six months' imprisonment, violated due process. <u>Id.</u> at 229-30. The felon registration ordinance required a convicted felon to register with law enforcement within five days of entering Los Angeles, but it did not require proof that the defendant knew of the registration requirement. <u>Id.</u> at 226-27. The Supreme Court reversed the defendant's conviction because being in Los Angeles is not inherently unlawful, and thus the defendant had no reason to believe that her conduct might be proscribed. <u>Id.</u> at 228-30.

Similarly, in <u>Liparota</u>, the Supreme Court held that the offense of unlawfully acquiring food stamps required proof that the defendant knew he had acquired the stamps unlawfully. <u>Liparota</u>, 471 U.S. at 426. The Supreme Court made clear that "constitutional constraints" limit a legislature's ability to enact strict liability crimes. <u>Id.</u> at 424 n.6. Additionally, the Supreme Court read a *mens rea* of specific intent into the statute as a matter of judicial construction because dispensing with a *mens rea* requirement and treating the statute as a true strict liability offense would have resulted in reading the statute to outlaw a number of innocent acts. <u>Id.</u> at 433 (distinguishing possession of a food stamp from possession of a hand grenade—a particularly dangerous weapon).

While the Supreme Court has upheld statutes regulating inherently dangerous conduct without requiring *mens rea* as to every element, such instances, unlike the present one, did not involve pure strict liability offenses; rather, they involved statutes that included at least some *mens rea* requirement. For example, in <u>Balint</u>, the Supreme Court addressed the requisite *mens rea* for a violation of the Narcotic Act of 1914.

Balint, 258 U.S. at 253-54.   The statute at issue in Balint was not a true strict liability statute because it required proof that the defendant knew that he was selling "dangerous narcotics."   Id. at 254.   The Supreme Court held that due process was satisfied without proof of the additional fact that the defendant knew that the specific narcotics he was selling were within the ambit of the statute because "where one deals with others and his mere negligence may be dangerous to them, as in selling diseased food or poison, the policy of the law may, in order to stimulate proper care, require the punishment of the negligent person though he be ignorant of the noxious character of what he sells."[9]   Id. at 252-53; see also United States v. Int'l Minerals & Chem. Corp., 402 U.S. 558, 564 (1971); United States v. Freed, 401 U.S. 601, 609 (1971).   By contrast, Florida's statute does not require even the minimal showing that the Defendant knew he was delivering any illicit substance as an element of the offense charged.[10]

---

[9] Nor does Balint support the constitutionality of FLA. STAT. § 893.13 because, unlike the provision upheld in Balint, § 893.13 does not require proof that the defendant knew what he was delivering or even that he was delivering it, much less that it was known by him to be dangerous.  Cf. Balint, 258 U.S. at 252-53. Florida's prohibition on the mere delivery of a substance without proof of knowledge is therefore akin to the Los Angeles ordinance stricken in Lambert and the food stamp provision in Liporata.  See Liparota, 471 U.S. at 426; see also Lambert, 355 U.S. at 226.

[10] Curiously, according to Florida's Standard Criminal Jury Instructions, if charged with the crime of possession, the State would at least have to prove that the Defendant had knowledge of the presence of the substance, but again, not that it was an illicit substance.  See FLA. STD. JURY INSTR. (Crim.) 25.2. Specifically, the jury instructions provide that in order to prove the crime of sale, purchase, manufacture, delivery, or possession of cocaine:

> [T]he state must prove the following elements bond a reasonable doubt:
> 1. Defendant [sold], [purchased], [manufactured] [delivered] [possessed with intent to sell] [possessed with intent to purchase] [possessed with intent to manufacture] [possessed with intent to deliver] a certain substance.
> 2. The substance was cocaine.
> *Give if possession is charged.*
> 3. Defendant had knowledge of the presence of the substance.

FLA. STD. JURY INSTR. (Crim.) 25.2.  The source of this distinction is nowhere apparent in the statute, and the knowledge requirement is, as noted above, not a factor in the delivery instruction.  See FLA. STAT. § 893.13(1)(a).

In <u>Freed</u>, the Supreme Court considered a statute proscribing another inherently dangerous and likely to be regulated activity—possession of unregistered grenades. <u>Freed</u>, 401 U.S. 607. The statute was not a pure strict liability offense because it required proof that the defendant knew the items in his possession were grenades. <u>Id.</u> The defendant contended the statute should be read to require the Government to prove the defendant also knew the grenades were unregistered. <u>Id.</u> at 605. The Supreme Court disagreed and upheld the statute notwithstanding its ten-year maximum penalty because "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." <u>Id.</u> at 609. Thus, under <u>Freed</u> due process is not offended by a ten-year penalty when the statute requires general rather than specific intent and where the conduct at issue is inherently dangerous. There is nothing in <u>Freed</u>, however, to suggest the Supreme Court would have upheld the statute had it permitted guilt without proof the defendant knew what he possessed was a grenade.

Knowledge of the hazardous character of substances has also been sufficient to sustain liability in the shipping context. <u>See</u> <u>Int'l Minerals</u>, 402 U.S. at 564. In this context, because "dangerous or deleterious devices or products or obnoxious waste materials are involved, probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them has to be presumed to be aware of the regulation" requiring classification of property on shipping papers. <u>Id.</u> at 565. Thus, in <u>Int'l Minerals</u>, the Supreme Court sustained a statute proscribing the knowing shipment of "corrosive liquids" without listing them as such in the shipping papers. <u>Id.</u> Analogous to the statute at issue in <u>Freed</u>, the statute at issue in <u>Int'l Minerals</u> was not one of strict liability because it required proof that the defendant knew he was shipping

21

dangerous materials—sulfuric acid.  Id. at 560.  Because shipping sulfuric and other dangerous acids is inherently dangerous and likely to be regulated, the Supreme Court held due process did not require proof that the defendant also knew he was required to list this on the shipping papers.  Id. at 664-65.  However, the Supreme Court emphasized that had the statute attempted to so regulate the shipping of "pencils, dental floss" and "paper clips," without a greater *mens rea* requirement, this would "raise substantial due process questions."  Id.

Many of the cases discussed, supra, analyze either the severity of the punishment or the inherently questionable nature of the conduct at issue.  The Supreme Court's decision in Staples, however, discusses all three considerations relevant to the due process inquiry—punishment, stigma, and type of conduct at issue.  Staples, 511 U.S. at 604-19.  As noted previously, the Supreme Court in Staples addressed the *mens rea* necessary to sustain a conviction under the National Firearms Act—whether the Government was required to prove beyond a reasonable doubt that the defendant knew the weapon he possessed had characteristics that brought it within the ambit of the statutory definition of a machine gun.  Id. at 604.

The Supreme Court held that it was indeed necessary for the government to prove the defendant's awareness of the characteristics of his firearm that rendered it unlawful.  Id. at 619.  In reaching this conclusion, the Supreme Court distinguished the possession of hand grenades because "there is a long tradition of widespread lawful gun ownership by private individuals in this country."  Id. at 610.  Additionally, the Supreme Court declined to construe the statute as dispensing with *mens rea* because

the statute carried a harsh penalty of up to ten years' imprisonment for violations and would thus do grave damage to an offender's reputation. Id. at 616-18.

After reviewing the extensive history, case law, and commentary regarding strict liability offenses, the Supreme Court explained that this history "might suggest that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense," and that "absent a clear statement from Congress that *mens rea* is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with *mens rea*." Id. at 618. The Court did not find it necessary to establish a firm rule because it found that the severe ten-year penalty, attendant stigma, and inherently innocent nature of gun ownership required it to construe the statute to include a *mens rea* element regarding the nature of the firearm owned. Id. at 619-20. However, analogous to the statute at issue in Freed, this was not a true strict liability offense because the government was required to prove that the defendant knew he possessed something that was "highly dangerous and of a type likely to be subject to regulation." Id. at 634-35.

Under this analytical framework, Fla. Stat. § 893.13 cannot survive constitutional scrutiny when considered in relation to the conduct it regulates—the delivery of any substance. To state the obvious, there is a long tradition throughout human existence of lawful delivery and transfer of containers that might contain substances under innumerable facts and circumstances: carrying luggage on and off of public transportation; carrying bags in and out of stores and buildings; carrying book bags and purses in schools and places of business and work; transporting boxes via commercial transportation—the list extends *ad infinitum*. Under Florida's statute, that

23

conduct is rendered immediately criminal if it turns out that the substance is a controlled substance, without regard to the deliverer's knowledge or intent.

The State's only rebuttal to this point is a citation to a footnote in <u>Staples</u>:

> Of course, if Congress thinks it necessary to reduce the Government's burden at trial to ensure proper enforcement of the Act, it remains free to amend § 5861(d) by explicitly eliminating a *mens rea* requirement.

<u>Staples</u>, 511 U.S. at 161 n. 11.  (Dkt. 36 at 13)  This, the State suggests, is an express pronouncement that "the legislature's abolition of a *mens rea* requirement does not render [FLA. STAT. § 893.13] . . . unconstitutional" because it is within the legislature's power to "do away with a *mens re*a requirement."    (Dkt. 36 at 18)    To support its position, the State cites several Florida cases[11] upholding challenges to the facial constitutionality of FLA. STAT. § 893.13; however, these cases contain no analysis of or citation to the tripartite constitutional analysis employed by the United States Supreme Court in <u>Staples</u>.  (Dkt. 7 at 5)  The States cites no Florida appellate case that has addressed the constitutionality of this statute under the federal Constitution.   Most recently, a Florida Circuit Court concluded that FLA. STAT. § 893.135(1)(b), the cocaine trafficking provision, is unconstitutional on its face and as applied.  <u>See</u> <u>State v. Green</u>, No. 08-3673-CF-10A (Fla. Cir. Ct. Feb. 7, 2011).  (Dkt. 31-1)  More importantly, the Supreme Court's dicta in <u>Staples</u> that a legislature is free to eliminate *mens rea* in defining the elements of an offense does not dispense with its prior holdings requiring constitutional scrutiny of any such promulgation.  As the Court explained in <u>Patterson</u>, 432 U.S. at 210, even if the legislative bodies choose to eliminate elements from

---

[11] <u>See, e.g.,</u>  <u>Reynolds v. State</u>, 842 So. 2d 46, 47-48 (Fla. 2002); <u>Harris v. State</u>, 932 So. 2d 551, 552 (Fla. 1st DCA 2006); <u>Wright v. State</u>, 920 So. 2d 21 (Fla. 4th DCA 2005), *rev. denied*, 915 So. 2d 1198 (Fla. 2005); <u>Burnette v. State</u>, 901 So. 2d 925 (Fla. 2d DCA 2005).

criminal offenses "***there are obviously constitutional limits beyond which the States may not go in this regard***."  (emphasis added). The State of Florida exceeded those bounds in this instance.

### C.  Respondents' Remaining Arguments Regarding FLA. STAT. § 893.13

In a final effort to salvage § 893.13, Respondents suggest any constitutional infirmity should be overlooked because: (1) the defendant may raise lack of knowledge as an affirmative defense, rending the statute something other than a strict liability offense (Dkt. 36 at 7); or, alternatively, (2) "it is difficult to conceive of large numbers of people 'innocently' selling or purchasing flour and sugar in plastic baggies for cash on a streetcorner." (Id. at 4)  Each of these arguments is discussed in turn.

### 1.  The Affirmative Defense Set Forth in FLA. STAT. § 893.101 Cannot Be Both an Affirmative Defense and an Element of the Offense

In a vacillating and legally unsupported argument, the State contends that the question of whether the statute results in a strict liability offense cannot be answered in "a simple 'yes' or 'no'." (Dkt. 36 at 7)  However, the Florida Legislature's removal of a *mens rea* requirement from drug offenses could not be more clear.  The statute explicitly provides "knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter."  FLA. STAT. § 893.101(2).  On its face the statute punishes actual, constructive, and/or attempted delivery without any proof of knowledge—not only of the illicit nature of the substance but, apparently, even of its delivery in fact.  See FLA. STAT. §§ 893.02(6), 893.13(1)(a).

Despite the clear language of the statute and the unequivocal impetus for its promulgation, see section I(A), supra, the State seems to contend that the offense is not

a strict liability crime because the defendant may raise lack of knowledge as an affirmative defense. (Dkt. 7 at 7) This contention fails for two reasons. First, even if knowledge could be properly relegated to an affirmative defense for such an onerous felony as drug distribution, it does not change the character of the statute from a strict liability statute. Whether a statute is viewed as one of strict liability is determined by reference to its elements not available affirmative defenses.

Second, if this averment is offered to suggest that knowledge becomes an element of the offense if raised by the Defendant as an affirmative defense, the State is hoisted on its own petard. By the plain import of the statute, the Defendant bears the burden of raising and proving the affirmative defense of knowledge, and the State enjoys a presumption against the proof that a Defendant might proffer. But, as the State well knows, it cannot shift the burden of proof to a Defendant on an essential element of an offense. Patterson, 432 U.S. at 215 (recognizing that "a State must prove every ingredient of an offense beyond a reasonable doubt . . . it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. . . . Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause."); Morissette, 342 U.S. at 256 (emphasizing the law endows the accused with an "overriding presumption of innocence . . . which extends to every element of the crime."); U.S. v. Blankenship, 382 F.3d 1110, 1127 (11th Cir. 2004) (recognizing that "[a] defendant is never obligated to prove anything to a jury, and a jury is entitled to believe a defendant's claims regardless of whether he offers proof to substantiate them."); U.S. v. Kloess, 251 F.3d 941, 948-49

(11th Cir. 2001) (noting because "affirmative defenses are created through statutory exceptions, the ultimate burden of persuasion remains with the prosecution, but the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue. . . . Any requirement to do more would unconstitutionally shift the burden to the defendant to prove his innocence by negating an element of the statute-the required *mens rea.* This the Constitution forbids.") (internal citation and quotation marks omitted).

What is more, if this affirmative defense is somehow transformed into an element of the offense, it would fail constitutional review for the additional reason that it purports to dispense with the fundamental precept underlying the American system of justice—the "presumption of innocence." By its terms, the statute permits the jury to presume the presence of knowledge and forces the Defendant to overcome the presumption. Thus, either the statute does not require *mens rea*, rendering it a strict liability offense, or it does require proof of *mens rea*, in which case the proof of that element could not constitutionally be shifted to the Defendant under the guise of an affirmative defense.

In point of fact, this aspect of the State's response is wholly without merit. The legislative intent could not be more clear—§ 893.101 "expressly provides that knowledge of the illicit nature of a controlled substance is not an element of any offense under chapter 893." Miller v. State, 35 So. 3d 162, 163 (Fla. 4th DCA 2010). And, in the instant case, the jury instruction was devoid of any reference to *scienter, mens rea*, or any level of knowledge of the nature of the substance or even of the delivery itself.

(See Dkt. 8 at B. 338)  Thus, both Florida's legislative body and its courts have made clear that this statute is a strict liability statute.

## 2.  "Tough Luck!" is no Answer to the Constitutional Infirmity of FLA. STAT. §  893.13

Additionally, the State argues that FLA. STAT. §  893.13 does not regulate innocuous conduct since "the possession of cocaine is never legal," and the imposition of harsh penalties without proof of *mens rea* is simply a risk drug dealers undertake for selling or delivering cocaine.  (Id. at 18)  By this assertion, the State confirms Professor Sanford H. Kadish's hypothesis that the basis for strict liability crimes is often simply a backhanded retort - - "tough luck" to those who engage in criminal activity.  Sanford H. Kadish, *Excusing Crime*, 75 Cal. L. Rev. 257, 267-68 (1987).

But, in this suggestion, the State ignores that Florida's statute is not a "drug dealer beware" statute but a "citizen beware statute."  Consider the student in whose book bag a classmate hastily stashes his drugs to avoid imminent detection.  The bag is then given to another for safekeeping.  Caught in the act, the hapless victim is guilty based upon the only two elements of the statute: delivery (actual, constructive, or attempted) and the illicit nature of the substance.  See FLA. STAT. §§  893.02(6), 893.13(1)(a).  The victim would be faced with the Hobson's choice of pleading guilty or going to trial where he is presumed guilty because he is in fact guilty of the two elements.  He must then prove his innocence for lack of knowledge against the permissive presumption the statute imposes that he does in fact have guilty knowledge.

Such an outcome is not countenanced under applicable constitutional proscriptions.[12]

The Court declines to grant the State broad, sweeping authority to impose such an outcome in direct contravention of well-established principles of American criminal jurisprudence—that no individual should be subjected to condemnation and prolonged deprivation of liberty unless he acts with criminal intent—and binding Supreme Court precedent governing the constitutional analysis of strict liability offenses. See Staples, 511 U.S. at 619-20. Because FLA. STAT. § 893.13 imposes harsh penalties, gravely besmirches an individual's reputation, and regulates and punishes otherwise innocuous conduct without proof of knowledge or other criminal intent, the Court finds it violates the due process clause and that the statute is unconstitutional on its face. Accordingly, Petitioner's request for habeas relief on claim one is **GRANTED**.

## III.    PETIONER'S REMAINING HABEAS CLAIMS

The Court finds Petitioner's remaining challenges to his conviction and sentence unavailing.[13]   In claims two through nine, Petitioner alleges: (a) his habitual felony offender classification is illegal for an offense related to drug possession; (b) ineffective

---

[12] The Court notes with some consternation that if the Florida legislature can by edict and without constitutional restriction eliminate the element of mens rea from a drug statute with penalties of this magnitude, it is hard to imagine what other statutes it could not similarly affect. Could the legislature amend its murder statute such that the State could meet its burden of proving murder by proving that a Defendant touched another and the victim died as a result, leaving the Defendant to raise the absence of intent as a defense, overcoming a permissive presumption that murder was the Defendant's intent? See Patterson, 432 U.S. at 205-06 (reasoning that an affirmative defense is constitutional where it does not negate the due process requirement that the prosecution prove beyond a reasonable doubt all the elements of murder—the death, the intent to kill, and causation). Could the state prove felony theft by proving that a Defendant was in possession of an item that belonged to another, leaving the Defendant to prove he did not take it, overcoming a permissive presumption that he did?

[13] Although the Petitioner specifically cites nine grounds as a basis for granting habeas relief, Ground 4 ("Improper Closing Arguments Made by Prosecutor Denied Defendant Fair and Impartial Trial Due Process") and Ground 5 ("Ineffective Assistance of Counsel-Failure to Object to Improper Prosecutorial Comments During Closing Arguments") are substantially similar and will be discussed together as one claim for relief. (See Dkt. 1 at 13-19)

assistance of counsel for failure to raise illegal sentence issues; (c) ineffective assistance of counsel for failure to object to prosecutorial misconduct during closing; (d) ineffective assistance of counsel for failure to argue reasonable doubt; (e) ineffective assistance of counsel for failure to conduct effective cross-examination of state witnesses to elicit exculpatory evidence; (f) ineffective assistance of counsel regarding cumulative errors caused by counsel's lack of effectiveness; and (g) denial of due process and equal protection by the state court for refusing to permit filing of a motion to correct illegal sentence in the trial court.  (Dkt. 1 at 5-35)  To the extent warranted, each is addressed, infra.

### A.  Habitual Felony Offender Classification Claim

In claim two, Petitioner contends his habitual felony offender sentence is not authorized by FLA. STAT. § 775.084 because delivery of cocaine is an offense "related to" the possession of a controlled substance and therefore cannot be considered an enhanceble offense.  (Dkt. 1 at 8-9)

Section 775.084(1)(a) provides that a habitual offender sentence may be imposed on a criminal defendant if:

> 1. The defendant has previously been convicted of any combination of two or more felonies in this state or other qualified offenses.
>
> 2. The felony for which the defendant is to be sentence was committed:
>
>> a. While the defendant was serving a prison sentence or other sentence, or court-ordered or lawfully imposed supervision that is imposed as a result of a prior conviction for a felony or other qualified offense; or
>>
>> b. Within 5 years of the date of the conviction of the defendant's last prior felony or other qualified offense, or within 5 years of the defendant's release from a prison sentence, probation, community control, control release, conditional release, parole or court-ordered or lawfully imposed supervision . . . . .

3.  The felony for which the defendant is to be sentenced, and one of the two prior felony convictions, is not a violation of s. 893.13 **relating to the purchase or the possession** of a controlled substance.

4.  The defendant has not received a pardon for any felony or other qualified offense that is necessary for the operation of this paragraph.

5.  A conviction of a felony or other qualified offense necessary to the operation of this paragraph has not been set aside in any postconviction proceeding.

FLA. STAT. § 775.084(1)(a) (emphasis added).  Further, "to be counted as a prior felony for purposes of sentencing under this section, the felony must have resulted in a conviction sentenced separately prior to the current offense and sentenced separately from any other felony conviction that is to be counted as a prior felony."  FLA. STAT. § 775.084(5).  "The statute reflects the legislative intent to exempt purchase or possession of controlled substances from habitual felony offender enhanced sentencing."  Dougherty v. State, 33 So. 3d 732, 733-34 (Fla. 5th DCA 2010).  Florida courts have consistently held that while it is improper under Florida law to impose an habitual offender sentence for possession of cocaine, habitual offender sentencing is proper for the sale or delivery of cocaine.  See Marrero v. State, 741 So. 2d 634, 634 (Fla. 3d DCA 1999).  Florida's interpretation of its own sentencing laws in this regard is within the exclusive purview of the Florida courts and provides no basis for federal habeas corpus relief.  See Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005).  Thus, assuming, arguendo, the Court were to sustain Petitioner's conviction for delivery of cocaine, his habitual felony offender status would remain undisturbed.  See Marrero, 741 So. 2d at 634.

As noted, in section II(B), supra, however, the Court has ruled Petitioner's conviction for delivery of cocaine must be overturned; therefore this issue **DENIED as**

**moot**.  Whether and to the extent that Petitioner is subject to habitual felony offender status based upon his criminal history related to other felony convictions is an issue for the Florida trial court on resentencing.

### B.  Ineffective Assistance of Counsel Claims

As to claims three through eight, Petitioner has failed to demonstrate either deficient performance or the existence of prejudice necessary to sustain a claim for ineffective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984) (establishing a two-part test for determining ineffective assistance: (1) whether counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) whether the deficient performance prejudiced the defense).  In deciding whether there was deficient performance, the Court must review counsel's actions in a "highly deferential" manner and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. To overcome Strickland's presumption of reasonableness, Petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

The second showing required under Strickland is prejudice: Petitioner must also show that, but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different—that is, the reviewing Court's confidence in the outcome must be undermined by counsel's deficient performance.  Strickland, 466 U.S. at 694.

### 1. Claim Three

Petitioner contends that trial counsel was ineffective because he failed to object to Petitioner's sentence on the grounds that it is unconstitutional as it exceeds the maximum allowable for a strict liability offense and because it is not authorized by FLA. STAT. § 775.084. (Dkt. 1 at 10-12) In response, the State contends this claim was procedurally defaulted in the state court and is therefore barred from consideration by this Court. (Dkt. 7 at 8)

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief. (Dkt. 8 at E.) The trial court denied this ground, stating (1) that Petitioner's sentence is legal, as it does not exceed the maximum allowed pursuant to the habitual felony offender statute; and (2) Petitioner was procedurally barred from raising claims that could have or should have been raised on direct appeal. (Dkt. 8 at F. 4) Florida's Fifth District Court of Appeal *per curiam* affirmed. (Dkt. 8 at H.) This *per curiam* affirmance of the state trial court's finding of a procedural default bars this Court's consideration of claim three. See Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (recognizing that when a court has issued an alternative finding that a claim is procedurally barred, the federal court "should apply the state procedural bar and decline to reach the merits of the claim."). Accordingly, claim three is **DENIED**.

### 2. Claims Four and Five

Petitioner contends the prosecutor made improper statements in closing regarding Petitioner's guilt, the credibility of Petitioner's testimony, and the credibility of a state witness, thereby denying Petitioner due process and the right to a fair and impartial trial. (Dkt. 1 at 14-19) Specifically, Petitioner alleges that trial counsel was

ineffective for failing to object to following the comments:

> The defendant went there to sell Jerry Yon cocaine. Yon was given some money to do that. The charges -- on that charge is delivery of cocaine. Did the defendant deliver some cocaine . . . Did he deliver any cocaine to Jerry Yon? Yes. You saw the cocaine; you heard the testimony from Yon. You heard the testimony from Wiley Black. The cocaine's in evidence; it is cocaine. There's no doubt about that.

> There's no testimony about where it possibly wound up, and why it wasn't recovered or what happened to it. It doesn't really matter. Did the defendant deliver any cocaine to Jerry Yon? Yes. In short, the defendant's entire testimony was fascinating beyond belief and not worthy of your belief.
>
> . . .
>
> Jerry Yon -- you saw his demeanor on the witness stand. He's incarcerated right now. He has nothing to gain by his testimony in this case. There are -- there's nothing; no reason for you to believe that he has anything to gain by his testimony in this case. In fact, he told you, he did not want to be testifying in this case, and he fears for himself in this case.
>
> . . .
>
> He [Yon] got the dope from the person that he knew would bring him some dope, and he [Petitioner] did, and he handed it over to Wiley Black. He probably dropped some in the car. He doesn't know. It all happened very fast in the car.
>
> . . .
>
> You have testimony from Jerry Yon, who has nothing to gain by his testimony about the delivery that took place and why he did it.
>
> . . .
>
> In this case, the facts fit together to prove to you just what the state has charged. That the defendant went to that Winn-Dixie parking lot to deliver cocaine, to someone he's known, Jerry Yon, who had called him up that same day. He didn't go there to chat with Jerry Yon, as he says. He went there to deliver cocaine to him.

(Dkt. 8 at B. 312-13, 315, 322)

Petitioner raised these claims in his *pro se* appeal to the Fifth District Court of Appeal and in his Rule 3.850 motion for post-conviction relief. (Dkt. 8 at C., E.) The state court denied the claims, finding the comments Petitioner listed as personal opinion were not, in fact, personal opinions; rather, "the prosecutor was merely relating to the

jury what the evidence presented at trial showed." (Dkt. 8 at F. 5) Due to the evidence presented at trial and the contradictions in Petitioner's own testimony, the state court concluded the prosecutor did not improperly attack Petitioner's credibility and that it was reasonable for the prosecutor to argue Petitioner's testimony was not believable. (Id. at 5-6) Additionally, the state court concluded that the prosecutor's comments regarding Mr. Yon did not improperly bolster Mr. Yon's credibility because the prosecutor was merely recapitulating Mr. Yon's testimony and noting what conclusions the jury could draw from that testimony. (Dkt. 8 at F. 5-6)

Due process is denied "when there is a reasonable probability," or "a probability sufficient to undermine confidence in the outcome," that, but for the improper remarks, "the outcome of the proceeding would have been different." United States v. Eyster, 948 F.2d 1196, 1206–07 (11th Cir. 1991) (citations omitted). The prosecutor's comments must both (1) be improper and (2) "prejudicially affect the substantial rights of the defendant." United States v. Thompson, 422 F.3d 1285, 1297 (11th Cir. 2005). A prosecutor's comments constitute improper "vouching" if they are "based on the government's reputation or allude to evidence not formally before the jury." Eyster, 948 F.2d at 1206.

The record supports the state court's findings that no improper remarks were made during closing arguments. The prosecutor's statements did not contain any suggestion that he was relying on information outside of the evidence presented at trial. (See Dkt. 8 at B. 312-13, 315, 322) Further, the prosecutor supported the State's contention that the Petitioner was guilty and/or that Petitioner's version of events was not credible by referring to other testimony given during the trial. (Id. at 312-14)

Petitioner has not demonstrated that the prosecutor's comments, even if impermissible, had a substantial and injurious effect on the jury, as there was testimony from other witnesses that Petitioner delivered cocaine to Jerry Yon.  See Brecht v. Abrahamson, 507 U.S. 619, 638 (1993); see also Parker v. Allen, 565 F.3d 1258, 1273-74 (11th Cir. 2009) (recognizing that a prosecutor's comments must be improper and prejudicially affect the substantial rights of a defendant).  Mr. Yon testified on cross-examination that coming to court and testifying against Petitioner placed him in danger, however that he "was subpoenaed and I come here to tell the truth.  I've got nothing to gain and I'm not up here lying.  I wouldn't do anything to set somebody up."  (Dkt. 8 at B. 210)  While attempts to bolster a witness by vouching for his credibility are normally improper, in this case, the prosecutor was reiterating Mr. Yon's testimony and stating the reasonable inferences that could be drawn therefrom.  See Parker, 565 F.3d at 1273-74.  (See Dkt. 8 at B.  314, 321)

Petitioner has not demonstrated that any improper comments were made, nor has he shown that counsel was ineffective for failing to object to the comments cited, supra.  Therefore, the Florida courts' denial of these claims was neither contrary to federal law nor an unreasonable determination of the facts in light of the evidence presented.  See Strickland, 466 U.S. at 689; see also Eyster, 948 F.2d at 1206.  Accordingly, any claims predicated on the prosecutor's improper expression of personal opinion, attacking Petitioner's testimony, and/or improperly bolstering a state witness's credibility are **DENIED**.

### 3. Claim Six

In claim six, Petitioner contends that trial counsel was ineffective for failing to argue to the jury key evidence that established a reasonable doubt as to Count IV, the delivery of cocaine charge. (Dkt. 1 at 20) Petitioner asserts, <u>inter alia</u>, that trial counsel failed to emphasize the fact that Mr. Yon's girlfriend, who accompanied Mr. Yon to the drug deal, was never searched and that Officer Black did not maintain continuous visual observation of Mr. Yon and his girlfriend. (<u>Id.</u>) Petitioner raised claim six in his Rule 3.850 motion for post-conviction relief. (Dkt. 8 at E.) In rejecting this claim, the state court concluded that even if trial counsel had commented on Officer Black's failure to search Mr. Yon's girlfriend and his inability to monitor all of the parties during the course of the drug transaction, Petitioner still could not show that the result of trial would have been different. (Dkt. 8 at F. 7) (noting "[s]uch comments would not directly refute Yon's testimony that Defendant delivered cocaine to him, nor would they be sufficient to establish reasonable doubt.").

A review of the record in this case refutes Petitioner's claim and supports the state court's findings. Mr. Yon testified that Petitioner gave him the cocaine. (Dkt. 8 at B. 192) Officer Black testified that prior to the deal he searched Mr. Yon's van and verified that there were no illegal drugs inside. (<u>Id.</u> at 131) Officer Black also testified that he could see out of the van windows and watched the transaction between Mr. Yon and Petitioner. (<u>Id.</u> at 134) Therefore, there is no reasonable probability that the result of the trial would have been different had trial counsel commented on Officer's Black's failure to search Mr. Yon's girlfriend and/or his failure to maintain continuous visual observation. <u>See</u> <u>Strickland</u>, 466 U.S. at 694. Because Petitioner's claim is purely

speculative and there is no indication that the Florida courts' decisions were contrary to or an unreasonable application of the law, or were based on an unreasonable determination of the facts, claim six must be **DENIED**.

### 4. Claim Seven

Petitioner also claims that trial counsel was ineffective for failing to effectively cross-examine state witnesses to elicit exculpatory evidence as to Count IV, the delivery of cocaine charge. (Dkt. 1 at 24-27) Petitioner contends that trial counsel should have cross-examined Officers Black and Berry about whether they heard Petitioner agree, over the telephone, to deliver cocaine to Mr. Yon. (Id. at 24) According to Petitioner, had the jury been advised that Officers Black and Berry were not privy to the telephone conversation between Petitioner and Mr. Yon, the jury could not have found beyond a reasonable doubt that Petitioner was guilty as to Count IV. (Id. at 25) Petitioner raised claim seven in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claim. (Dkt. 8 at F. 7-8) Because "the officers simply related their recollection of events that transpired on the date the incident occurred," the state court concluded the officers' testimony did not mislead the jury regarding whether the officers were privy to Petitioner' telephone conversation with Mr. Yon. (Id. at 8) Finally, the court determined that Petitioner had not established the prejudice prong of Strickland because there was no showing that trial counsel's "failure to cross examine on this specific issue so thoroughly affected the case that the ultimate outcome was undermined." (Id.) The Court agrees.

Petitioner has not demonstrated that counsel's failure to cross-examine Officer Black prejudiced the outcome of the trial. Officer Black testified that Mr. Yon called

Petitioner to arrange the meeting. (Dkt. 8 at B. 132) Although Officer Black stated that "[w]e actually called him twice," the record is clear that Mr. Yon, acting as a confidential informant, called Petitioner to arrange a meeting to purchase cocaine. (See id. at 185-86, 132) Mr. Yon testified that he: (1) set up the meeting to buy cocaine from Petitioner in a parking lot; (2) drove with his girlfriend and Officer Black to a Winn Dixie parking lot; (3) arrived at the location before Petitioner; (4) exited his vehicle and got into Petitioner's vehicle when Petitioner arrived; and (5) "When I got in the car, I just handed the money and he [Petitioner] was in the process of handing me the cocaine when the cops swooped down on us, cars everywhere." (Id. at 185-88) There is nothing in the record beyond Petitioner's rank speculation to suggest that Officer Black's testimony misled the jury into believing that he heard the telephone conversation between Petitioner and Mr. Yon or that it would have impacted the outcome of the trial. As such, the state court's denial of this claim was not contrary to, or an unreasonable application of federal law, or unreasonable in light of the evidence and facts presented. Accordingly, claim seven is **DENIED**.

### 5. Claim Eight

In claim eight, Petitioner contends trial counsel was ineffective due to the cumulative effect of counsel's deficiencies. (Dkt. 1 at 28) The state court rejected this claim in Petitioner's Rule 3.850 motion for post-conviction relief, finding that because Petitioner's Strickland claims were without merit, there could be no cumulative effect of counsel's alleged errors. (Dkt. 8 at F. 8) Because Petitioner's individual claims of ineffective assistance of counsel warrant no relief, he cannot demonstrate cumulative error sufficient to entitle him to federal habeas relief. See Conklin v. Schofield, 366 F.3d

1191, 1210 (11th Cir. 2004) (noting the court "must consider the cumulative effect of . . . [the alleged errors] and determine whether, viewing the trial as a whole, [Petitioner] received a fair trial as is . . . due under our Constitution.") (quoting <u>United States v. Blasco</u>, 702 F.2d 1315, 1329 (11th Cir. 1983)).  Accordingly, claim eight is **DENIED**.

### 6. Claim Nine

Petitioner contends he was denied due process and equal protection when the state court denied him means to utilize the sentencing error correction procedures of Florida Rule of Criminal Procedure 3.800(b)(2).  (Dkt. 1 at 30-34)  During the pendency of his initial appeal, Petitioner contends Florida's Fifth District Court of Appeal denied his request to file a Rule 3.800(b)(2) motion.  (<u>Id.</u> at 30)  In response, the State argues that this claim is purely a state procedural matter.  (Dkt. 7 at 12-13)

Petitioner has raised a claim that does not implicate federal constitutional law and thus is not subject to federal habeas review.   "[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." <u>Quince v. Crosby</u>, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (citation omitted).  The state appellate court's refusal to permit Petitioner to file a Rule 3.800(b)(2) motion during the pendency of his appeal alleges a defect in the state court proceeding and only implicates the appellate court's interpretation of a state rule of criminal procedure.  Because a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, Petitioner's ninth claim is not subject to federal review since no question of a constitutional nature is involved.   See <u>Callahan</u>, 427 F.3d at 932; <u>see also</u> <u>McCullough v. Singletary</u>, 967 F.2d 530, 535 (11th Cir. 1992).

Even assuming, _arguendo_, the Court considered Petitioner's ninth claim, Petitioner cannot show that he was denied due process and equal protection. Rule 3.800(b)(2) permits a criminal defendant or the State to file, in the trial court, a motion to correct a sentencing error before the first appellate brief is served. FLA. R. CRIM P. 3.800(b)(2). Petitioner attempted to file his Rule 3.800(b)(2) motion **after** appellate counsel filed his Anders brief, and thus the appellate court correctly denied Petitioner's request as untimely. (See Dkt. 8 at C., I.) Because the alleged sentencing errors Petitioner wished to raise were filed in his initial _pro se_ brief, which was considered by the Fifth District Court of Appeal and rejected, Petitioner has not established prejudice. (See Dkt. 8 at C., D.) Accordingly, claim nine is **DENIED**.

Any of Petitioner's remaining allegations not specifically addressed herein have been found to be without merit and are also **DENIED**.

## IV.    CERTIFICATE OF APPEALABILITY

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prevents appellate review of a habeas petition unless the district or circuit courts certify specific issues for appeal. See 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b). Petitioner has not requested that this Court grant him a Certificate of Appealability ("COA"), although the Court can consider the issue _sua sponte._ See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). The Court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000);

see also Lamarca v. Sec'y Dep't of Corrs., 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds, a COA should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Clear, binding precedent forecloses relief on claims two through nine—for which Petitioner is not entitled to relief. Petitioner has not demonstrated that reasonable jurists would find the district court's assessment on these claims debatable or wrong. See Lamarca, 568 F.3d at 934. Under the appropriate standard, Petitioner's claims do not require this Court to certify any issue for appellate consideration. Accordingly, the Court will not issue a COA.

## V. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

(1) Mackle Vincent Shelton's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2255 (Dkt. 1), is **GRANTED** upon Ground One of his Petition and is **DENIED** upon all remaining grounds;

(2) With respect to Claim One, the Court conditionally **GRANTS** a writ of habeas corpus. A writ of habeas corpus shall issue unless within 90 days, the State of Florida vacates Petitioner's conviction and sentence with respect to Count IV and begins new sentencing proceedings against Petitioner regarding the same. The 90-day time period shall be tolled until the conclusion of any

appeal from this Order, either by the exhaustion of appellate remedies or the expiration of the time period within which to file such appellate proceedings;

(3) Petitioner's request for an evidentiary hearing (<u>See</u> Dkt. 1 at 36) and any other outstanding motions are **DENIED**;

(4) The Court will not certify any issue for appellate consideration;

(5) In accordance with Rule 57 of the Federal Rules of Civil Procedure, a Declaratory Judgment shall be entered separately, declaring FLA. STAT. § 893.13, as amended by FLA. STAT. § 893.101, unconstitutional; and,

(6) The **CLERK** is directed to mail a certified copy of this Order to the Clerk of the Circuit Court for the Ninth Judicial Circuit, in and for Osceola County, Florida.

**DONE** and **ORDERED** in Orlando, Florida, on this 27th day of July 2011.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Clerk, Osceola County Circuit Court